**Elenir Silvestre Do NASCIMENTO,
Plaintiff,**

v.

**Carolyn W. COLVIN [1], Commissioner
of Social Security, Defendant.**

**No. 12–CV–3750 (WFK).**

United States District Court,
E.D. New York.

Signed March 12, 2015.

---

1. Michael J. Astrue was originally listed as the named Defendant, but Carolyn W. Colvin has been substituted in as Defendant because she became the Acting Commissioner of Social Security on February 14, 2013. Fed.R.Civ.P. 25(d).

**50**

Charles E. Binder, Law Offices of Harry J. Binder and Charles E. Binder, P.C., New York, NY, for Plaintiff.

Arthur Swerdloff, United States Attorneys Office, Brooklyn, NY, for Defendant.

### DECISION AND ORDER

WILLIAM F. KUNTZ, II, District Judge:

Plaintiff Elenir Silvestre Do Nascimento ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), alleging that Defendant, Carolyn W. Colvin acting as the Commissioner of Social Security (the "Commissioner" and/or "Defendant"), improperly found that Plaintiff was only entitled to a period of Social Security disability benefits between May 1, 2007 and May 20, 2010 but not after May 20, 2010. Plaintiff filed a motion for judgment on the pleadings requesting that Defendant's decision be reversed and remanded for a calculation and award of benefits, or in the alternative, the decision be remanded for a new hearing and decision consistent with this Court's opinion. Defendant filed a cross-motion for judgment on the pleadings requesting an order affirming the Commissioner's decision. For the reasons that follow, Plaintiff's motion is GRANTED IN PART and DENIED IN PART. The Court REMANDS the case to the ALJ for further consideration consistent with this decision.

## BACKGROUND AND PROCEDURAL HISTORY

In 2007, Plaintiff started suffering from medical conditions associated with stomach cancer and acid reflux disease. *See* Dkt. 17 (Administrative Record) ("R."), at 42, 48. Plaintiff was 50 years old at the onset of the medical conditions at issue. *See id.* Plaintiff has a high school education and formerly worked as an apparel salesperson. *Id.* at 46–48. Plaintiff alleges that, as of May 1, 2007, her medical conditions associated with stomach cancer and acid reflux disease rendered her incapable of performing any work. *Id.* at 138.

Plaintiff filed an application for Social Security disability benefits under Title II and XVIII of the Social Security Act (the "Act"), on February 28, 2008. *Id.* at 125–126. Plaintiff's application was denied on November 21, 2008, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 70–83. An administrative hearing was held before ALJ Robert C. Dorf ("the ALJ") on June 21, 2010. *Id.* at 35–66. In a decision issued on July 16, 2010, the ALJ found that Plaintiff was disabled from May 1, 2007 to May 20, 2010, but not disabled at any time after May 20, 2010. *Id.* at 19–34. Plaintiff requested review of the unfavorable portion of the ALJ's decision by the Appeals Council on August 12, 2010. *Id.* at 17–18. The Appeals Council denied Plaintiff's request for review on May 31, 2012. *Id.* at 1–6. This denial became the Commissioner's final act.

## STANDARD OF REVIEW

■ When a claimant challenges the Social Security Administration's ("SSA") denial of disability benefits, the Court's function is not to evaluate *de novo* whether the claimant is disabled, but rather to determine only "whether the correct legal standards were applied and whether substan-

tial evidence supports the decision." *Butts v. Barnhart,* 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g,* 416 F.3d 101 (2d Cir.2005); *see also Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir.2009); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive..."). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consol. Edison Co. of N.Y., Inc. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *Moran,* 569 F.3d at 112. The substantial evidence test applies not only to the Commissioner's factual findings, but also to inferences and conclusions of law to be drawn from those facts. *See Carballo ex rel. Cortes v. Apfel,* 34 F.Supp.2d 208, 214 (S.D.N.Y.1999) (Sweet, J.). In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on both sides to ensure that the claim "has been fairly evaluated." *See Brown v. Apfel,* 174 F.3d 59, 62 (2d Cir.1999) (quoting *Grey v. Heckler,* 721 F.2d 41, 46 (2d Cir.1983)).

 It is the function of the SSA, not the federal district court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983) (citing *Richardson,* 402 U.S. at 399, 91 S.Ct. 1420); *see also Clark v. Comm'r of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir.1998). Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the de-

termination is supported by substantial evidence." *Calzada v. Asture,* 753 F.Supp.2d 250, 268–269 (S.D.N.Y.2010) (Sullivan, J.) (quoting *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir.1984)) (quotation marks omitted).

 To fulfill this burden, the ALJ must "adequately explain [her] reasoning in making the findings on which [her] ultimate decision rests" and must "address all pertinent evidence." *Kane v. Astrue,* 942 F.Supp.2d 301, 305 (E.D.N.Y.2013) (Kuntz, J.) (quoting *Calzada,* 753 F.Supp.2d at 269). "[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Id.* (internal quotation marks and citations omitted). Remand is warranted when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan,* 168 F.3d 72, 83 (2d Cir.1999).

## DETERMINATION OF DISABILITY

### I. Applicable Law

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The impairments in question must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. *See Rosa,* 168 F.3d at

77. The claimant bears the burden of proving the first four steps, while the burden shifts to the Commissioner at the fifth step. *Id.* First, the Commissioner must determine whether claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not so engaged, the second step is to determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has such an impairment, the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment does not match any of the listings, the fourth step is to determine whether the claimant's residual functional capacity ("RFC") allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform past relevant work, the final step is to determine whether the claimant can perform another job based on his or her RFC, work experience, age, and education. 20 C.F.R. § 404.1520(a)(4)(v).

## II. The ALJ's Decision

On July 10, 2010, the ALJ followed the five-step procedure to evaluate Plaintiff's claim and found that: (1) Plaintiff had not engaged in substantial gainful activity since May 1, 2007, the alleged onset date; (2) Plaintiff had severe impairments of colon cancer, small bowel cancer, and gastric cancer which caused post-chemotherapy abdominal pain with inflammation; (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) From May 1, 2007 through May 20, 2010, Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except for an inability to sustain work on a regular and continuing basis; and (5) From May 1, 2007 through May 20, 2010, considering Plaintiff's age, education, work experience, and RFC, "there were no jobs that existed in significant numbers in the national economy that the claimant could have performed." As a result, the ALJ found that Plaintiff was under a disability, as defined by the Social Security Act, from May 1, 2010 through May 20, 2010. R. at 23–29.

The ALJ also found that Plaintiff's disability ended on May 21, 2010 because medical improvement occurred as of that date. *Id.* at 29. The ALJ noted that beginning on May 21, 2010, Plaintiff had the RFC to perform the full range of "light work" as defined in 20 C.F.R. § 404.1567(b).[2] *Id.*

In determining that Plaintiff had the RFC to perform light work, the ALJ considered Plaintiff's testimony, as well as the medical opinions of Dr. Seetha R. Murukutla, M.D., Plaintiff's treating oncologist, and Dr. Divyang Parikh, M.D., Plaintiff's treating gastroenterologist. *Id.* at 30. The ALJ ultimately found that Plaintiff's statements were not credible beginning May 21, 2010 because they were inconsistent with the RFC assessment, and that the ALJ did not have to grant significant weight to the assessments of treating physicians because they failed to document significant complaints or findings. *Id.*

As a result, the ALJ concluded that "[w]hile it is apparent that [Plaintiff] continues to suffer some functional limitations,

---

**2.** Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," as well as as "a good deal of walking or standing." 20 C.F.R. 404.1567(b).

the undersigned finds[,] considering an evaluation of the relevant medical and documentary evidence as well as the [Plaintiff's] testimony[,] that since May 21, 2010 [Plaintiff] has retained the RFC to perform a full range of light work with lifting and carrying up to 20 pounds occasionally, and 10 pounds frequently; standing and/or walking up to six hours in an eight hour day; and sitting and working up to six hours in an eight hour day." *Id.* Therefore, "[b]eginning on May 21, 2010, [Plaintiff] has been capable of performing past relevant work as a salesperson, women's apparel. This work does not require the performance of work-related activities precluded by [Plaintiff's] current residual functional capacity." *Id.* at 31.

### III. The ALJ's Alleged Errors

Plaintiff argues that the ALJ, the Appeals Council, and the Commissioner erred when they found that Plaintiff was only entitled to a closed period of Social Security disability benefits between May 1, 2007 and May 20, 2010 but was not entitled to benefits after May 20, 2010. Specifically, Plaintiff alleges that the ALJ (1) failed to prove medical improvement to support a determination that Plaintiff was only entitled to a closed period of Social Security disability benefits; (2) failed to follow the treating physician rule; and (3) failed to properly evaluate Plaintiff's credibility. Dkt. 14 ("Pl.'s Br.") at 7–15. Plaintiff requests that the Commissioner's decision be reversed and remanded for a calculation and award of benefits, or in the alternative, the decision be remanded for a new hearing and decision consistent with this Court's opinion. *Id.* at 15.

#### A. *The ALJ Did Not Fail to Prove Medical Improvement*

We turn first to Plaintiff's argument that the ALJ failed to prove medical im-

provement. For the reasons set forth below, the Court disagrees.

Once a claimant establishes the existence of a disabling condition, "a claimant is entitled to a presumption that the classification will not change unless the condition, governing statutes, or regulations change." *Carbone v. Astrue,* 08–CV–2376, 2010 WL 3398960, at *12 (E.D.N.Y. Aug. 26, 2010) (Garaufis, J.) (internal citation omitted). As a result, when the Commissioner determines that a claimant is disabled only for a closed period, such a finding must be demonstrated by substantial evidence of medical improvement in the claimant's impairment or combination of impairments such that the claimant is now able to engage in substantial gainful activity. *See, e.g., Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir.2002); *Carbone,* 2010 WL 3398960, at *13. Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The Commissioner's findings concerning any fact are conclusive if supported by substantial evidence." *Matice v. Comm'r of Soc. Sec.,* 6:99–CV–1834, 2004 WL 437472, at *4 (N.D.N.Y. Feb. 11, 2004) (Sharpe, J.) (internal quotations and citations omitted).

"Medical improvement is defined as any decrease in the medical severity of a claimant's impairment which was present at the time of the most recent favorable medical decision that he or she was disabled or continues to be disabled. A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, or laboratory findings associated with a claimant's impairments." *Carbone,* 2010 WL 3398960, at *12 (internal quotations and citations omitted); *see also* 20 C.F.R. § 404.1594(b)(1). "[I]n order to determine whether medical improved has occurred,

[the Commissioner] must compare the current medical severity of the impairment to the medical severity of the impairment at the time of the most recent favorable medical decision." *Veino*, 312 F.3d at 586–87 (internal quotations, citations, and brackets omitted). "If medical improvement is found to be related to an individual's ability to work, then the ALJ is required to carry out the sequential evaluation process that is used in an initial determination. If the impairments are severe, but do not meet or equal the severity of any impairment contained in the Listing of Impairments, the individual's current [RFC] must be assessed based on all current impairments. As in an initial determination, the individual's current RFC will be compared to her past relevant work in order to determine if she can perform this work. If the RFC, age, education and work experience do not permit an individual to perform past relevant work, a determination will be made as to whether there is other work in the national economy that she can do. If such work exists, the claimant's disability will have ended." *Matice*, 2004 WL 437472, at *4 (internal quotations and citations omitted).

Here, the ALJ found medical improvement because "[t]he credible evidence documents that[,] as of May 21, 2010, there was a decrease in the medical severity of the [Plaintiff's] impairments from the time she became disabled based on positive changes in the symptoms, signs and/or laboratory findings associated with her impairments. Such objective and subjective improvement is evident in more recent treatment notes provided by Dr. Murukutla." R. at 29.

Plaintiff argues that "[t]he medical improvement standard requires evidence of a change in symptoms or clinical and/or diagnostic evidence. The ALJ does not cite to any of these required findings, but in-stead simply notes that Plaintiff ceased chemotherapy." Pl.'s Br. at 8. Plaintiff further states that "[t]he Commissioner failed to meet his burden of proof that there is substantial evidence [Plaintiff] has not had any disabling fatigue since May 21, 2010." *Id.* This is not true.

The record supports the ALJ's finding because it establishes by substantial evidence that "[P]laintiff's condition had improved by [May 21, 2010] to justify the termination of benefits for which [P]laintiff had previously qualified." *Fleming v. Sullivan*, 806 F.Supp. 13, 16 (E.D.N.Y.1992) (Nickerson, J.). For example, at the time Plaintiff was disabled, she complained of nausea, fatigue, on and off chronic diarrhea, and dull gastric pain. R. at 249, 251, 253. At times, Plaintiff even complained of severe fatigue and feeling very weak. *Id.* at 277, 279. Dr. Murukutla found that Plaintiff had a performance status of 1, meaning that Plaintiff was restricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature, *e.g.*, light house work or office work. *Id.* at 250, 261; Dkt. 15 ("Government's Memorandum of Law") at 7. At the time Plaintiff's disability was terminated, Dr. Murukutla noted that Plaintiff's pain occurred about once a week and that Plaintiff was not taking any pain medication. R. at 393. On a scale of one to ten, Dr. Murukutla noted that Plaintiff's fatigue was a four (moderate) and Plaintiff's pain was a two (mild). *Id.* Dr. Murukutla also noted that Plaintiff had a good ability to grasp, turn, and twist objects with her hands. *Id.* at 394–95. In fact, Plaintiff herself claimed she had "no other complaints." *See, e.g., id.* at 241, 244, 246, 247. Overall, Dr. Murukutla concluded that Plaintiff's experience of "pain, fatigue, or other symptoms severe enough to interfere with attention and concentration"

would only occur "periodically." *Id.* at 396.

Additionally, laboratory findings also support the conclusion that medical improvement had occurred. Biopsy findings of tissue taken during an esophagogastroduodenoscopy ("EGD") performed on May 11, 2007, revealed gastric adenocarcinoma. R. at 286–87. However, biopsies taken during EGDs conducted on February 6, 2009 and July 17, 2009, no longer showed the presence of adenocarcinoma. *Id.* at 210, 211–12. A whole body positron emission tomography—computed tomography ("PET/CT") scan conducted on January 29, 2008, revealed that Plaintiff's previously seen hypermetabolic focus in the gastroesophageal junction was no longer present, which indicates a complete response to therapy. *Id.* at 314–15.

Given the decrease in Plaintiff's level of fatigue, pain, and positive laboratory findings, there is substantial evidence to support a finding of medical improvement. The evidence establishes that there was a "decrease in the medical severity of a [Plaintiff's] impairment which was present at the time of the most recent favorable medical decision that [ ] she was disabled," on May 21, 2010. 20 C.F.R. § 404.1594(b)(1); *see also Baker v. Comm'r of Soc. Sec.,* 12–CV–1715, 2014 WL 1280306, at *6 (N.D.N.Y. Mar. 27, 2014) (McAvoy, J.) (substantial evidence of medical improvement existed because "Dr. Seybold's notes from October 12, 2007, show that, on physical examination, the Claimant was able to stand upright, forward flex and extend without pain, and had no showing of footdrop or any neurological deficit. Moreover, Dr. Seybold noted the Claimant was not taking pain medication for his lumbar spine, experienced some stiffness and had no severe back or leg pain.") (internal citations omitted). As a result, Plaintiff's request for remand on the grounds that the ALJ failed to prove medical improvement is DENIED.

### B. *The ALJ Failed to Follow the Treating Physician Rule*

We next turn to Plaintiff's argument that the ALJ failed to follow the treating physician rule. For the reasons set forth below, the Court agrees.

■ In evaluating the available medical evidence as part of an application for disability benefits, "[t]he law gives special evidentiary weight to the opinion of the treating physician[s]." *Clark,* 143 F.3d at 118. Specifically, the regulations provide that:

> Generally, [the SSA] give[s] more weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). For these reasons, the opinion of a treating physician must be given controlling weight on the issue of the nature and severity of a claimant's impairments, if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." *Id.* If a treating physician's opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the case record, then six factors must be assessed in order to determine how much weight to afford the treat-

ing medical opinion and other medical opinions: 1) whether the physician examined the claimant; 2) the nature and extent of the treatment relationship, including the length of the relationship and the frequency of examination; 3) the evidence in support of each opinion, such as medical signs, laboratory findings, and more complete explanations; 4) the extent to which the opinion is consistent with the record as a whole; 5) whether the medical provider is a specialist; and 6) any other relevant factors. 20 C.F.R. § 404.1527(c). The Second Circuit has instructed that remand is appropriate "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[.]s opinion," or when "opinions from ALJs [ ] do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir.2004).

In this case, Plaintiff has one treating physician: Dr. Murukutla. Plaintiff argues because "the opinions of Dr. Murukutla are based on acceptable clinical and diagnostic evidence and not contradicted by any other substantial evidence cited by the ALJ, the doctor's opinion should have been giving controlling weight." Pl.'s Br. at 10. Plaintiff further argues that "[r]egardless, if the ALJ felt that the clinical and diagnostic evidence cited by Dr. Murukutla were insufficient, he was required to further develop the record by contacting the doctor for clarification or at least making his concerns known to counsel." *Id.* at 11. Lastly, Plaintiff claims that "[e]ven if the ALJ was not required to grant controlling weight to Dr. Murukutla's opinions, he still failed to provide any analysis of the enumerated factors in 20 C.F.R. § 404.1527(c)(2)-(6), which must be considered before an opinion is rejected." *Id.*

In deciding to not give controlling weight to Dr. Murukutla's opinions, the ALJ noted:

"Dr. Murukutla has provided two somewhat different assessments of the [Plaintiff's] abilities and limitations. His June 25, 2010 assessment indicated ability to perform a limited range of sedentary work. However, there are internal consistencies, which significantly limit the amount of weight, which can be given to such assessment. When asked to list the [Plaintiff's] primary symptoms, he indicates the presence of intermittent, diffuse, abdominal pain but reports no associated findings. He also reports that he has included all relevant laboratory and diagnostic test results, although the most recent treatment medications provided by Dr. Murukutla are from March 2009 and indicate no significant complaints or findings. His other assessment dated May 27, 2010 relates that due to her condition, the claimant cannot work full time and cannot lift heavy objects. Again, no basis is provided for the assessment that the claimant cannot work on a full-time basis. Considering the recent evidence, which fails to document significant complaints or findings as well as the [Plaintiff's] testimony that she currently has significant residual functional capacity, the undersigned cannot grant significant weight to the assessments of treating physicians, which indicate that the [Plaintiff] cannot sustain work activity on a regular and continuing basis."

R. at 30 (internal citations omitted).

 Based on the foregoing assessment, the Court finds that remand is appropriate here for two reasons. First, the ALJ did not provide "good reason" for refusing to accord controlling weight to Dr. Murukutla's opinion. *Halloran*, 362 F.3d at 33. ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given

to a treating physicians opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

For example, the ALJ fails to explicitly consider several factors such as the frequency of examination and the length, nature, and extent of the treatment relationship between Dr. Murukutla and Plaintiff, and he fails to consider the consistency of Dr. Murukutla's opinion with the record as a whole. *Id.* at 32; *see also* 20 C.F.R. § 404.1527(c); *Balodis v. Leavitt,* 704 F.Supp.2d 255, 265–66 (E.D.N.Y.2010) (Bianco, J.) (remand appropriate where ALJ did not explicitly consider several factors when rejecting doctor's opinion). The ALJ is unable to cite to any inconsistency between Dr. Murukutla's opinion as compared to the record as a whole or as to other doctors who treated Plaintiff. The ALJ claims that Dr. Murukutla's opinion should not be granted significant weight because he "has provided two somewhat different assessments," one on May 27, 2010 and one on June 25, 2010 that contain "internal consistencies." R. at 30. However, upon review of Dr. Murukutla's two assessments, there are no significant internal consistencies that would warrant the ALJ to not grant controlling weight to Dr. Murukutla's opinion. The substance of both the May 27, 2010 and the June 25, 2010 assessments conclude that Plaintiff cannot work full time. The May 27, 2010 assessment concludes that "[d]ue to [Plaintiff's] condition she cannot work full time and cannot lift heavy objects." *Id.* at 221. The June 25, 2010 assessment concludes that Plaintiff cannot do a full-time competitive job, that Plaintiff's symptoms would increase if she was placed in a competitive work environment, and that Plaintiff would be absent from work more than three times a month as a result of the impair-

ments or treatment. *Id.* at 395–97. Ultimately, there is nothing in the ALJ's order that would allow this Court to establish that "good reasons" were provided to justify the ALJ's decision to not grant controlling weight to Dr. Murukutla's opinions.

■ Even if the ALJ had provided "good reason" to not give controlling weight to Dr. Murukutla's opinions, remand is appropriate for a second reason: the ALJ failed to develop the record. *See Rosa,* 168 F.3d at 79 ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.") (internal citations omitted). The ALJ explained that he did not grant significant weight to Dr. Murukutla's opinion because Dr. Murukutla provided "no basis for the assessment that [Plaintiff] could not work." R. at 30. The ALJ also noted that Dr. Murukutla's most recent treatment medications were from March 2009. *Id.* At this point, the ALJ should have taken steps directing Plaintiff or Plaintiff's counsel to ask Dr. Murukutla to supplement his findings and opinions with additional information. *See Rosa,* 168 F.3d at 80 ("Confronted with this situation, the ALJ should have taken steps directing [Plaintiff] to ask [Doctor] to supplement his findings with additional information. It is entirely possible that [Doctor,] if asked, could have provided a sufficient explanation for any seeming lack of support for his ultimate diagnosis of complete disability. As this Court recognized [ ], a treating physician's failure to include this type of support for the findings in his report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case.") (internal citations, quotations, and brackets).

Thus, because the ALJ found that Dr. Murukutla's opinions could not be granted controlling weight because Dr. Murukutla failed to provide a basis for the assessment that Plaintiff could not work, the ALJ had an obligation to develop the record by obtaining further information from Dr. Murukutla to assess what those opinions were based on. *See, e.g., Mortise v. Astrue*, 713 F.Supp.2d 111, 123 (N.D.N.Y. 2010) (Kahn, J.).

Accordingly, the case must be REMANDED to the ALJ for further consideration of Dr. Murukutla's opinion in light of this Court's analysis.

### C. The ALJ Erroneously Rejected Plaintiff's Testimony as Incredible

Last, we turn to Plaintiff's argument that the ALJ erroneously rejected Plaintiff's testimony as incredible. For the reasons set forth below, this Court agrees.

 While SSA regulations require an ALJ "to take the claimant's reports of pain and other limitations into account, he or she is not required to accept the claimant's subjective complaints without question." *Campbell v. Astrue*, 465 Fed.Appx. 4, 7 (2d Cir.2012) (alterations omitted) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)); *see also Fontanarosa v. Colvin*, 13–CV–03285, 2014 WL 4273321, at *12 (E.D.N.Y. Aug. 28, 2014) (Brodie, J.). "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1529(b)). Second, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (quoting 20 C.F.R. § 404.1529(a)). "The ALJ will consider all of the available medical evidence, including

a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa*, 2014 WL 4273321, at *12 (citing *Whipple v. Astrue*, 479 Fed.Appx. 367, 370–71 (2d Cir.2012)). "To the extent that a claimant's allegations of pain 'are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry.'" *Id.* (quoting *Meadors v. Astrue*, 370 Fed.Appx. 179, 184 (2d Cir.2010) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii))).

In making a credibility determination, the ALJ must consider seven factors: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of claimant's pain and other symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms; 5) any treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain or other symptoms; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Here, Plaintiff testified that she cannot bend on her knees, that she cannot sit down at a computer for more than an hour because she feels tired and weak, that she suffers from fatigue, and that she has diarrhea about one to three times a month. R. at 58–60. However, Plaintiff also testified that she has no pain in her hands, fingers, arms or legs, that she can lift and carry two gallons of milk, and that she has no pain in her stomach. *Id.* at 57–59.

The ALJ concluded that "[a]fter considering the evidence of record, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably

be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible beginning on May 21, 2010, to the extent they are inconsistent with the residual functional capacity assessment[.]" R. at 30. The ALJ further stated that "[w]hile it is apparent that [Plaintiff] continues to suffer some functional limitations, the undersigned finds considering an evaluation of the relevant medical and documentary evidence as well as [Plaintiff's] testimony that[,] since May 21, 2010[,] [Plaintiff] has retained the residual functional capacity to. perform a full range of light work with lifting and carrying up to 20 pounds occasionally, and 10 pounds frequently; standing and/or walking up to six hours in an eight hour day; and sitting and working up to six hours in an eight hour day." *Id.*

 Plaintiff argues that the ALJ applied the wrong legal standard by impermissibly comparing Plaintiff's claims to a pre-determined RFC and by failing to properly consider all seven factors required to make a credibility determination. Pl.'s Br. at 13–15. For the reasons set forth below, this Court agrees that the ALJ's credibility analysis was insufficient and not supported by substantial evidence.

The ALJ did not explicitly refer to or discuss any of the factors listed in 20 C.F.R. § 404.1529(c)(3). *See Grosse v. Comm'r of Soc. Sec.*, 08–CV–4137, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (Garaufis, J.) (finding that ALJ "committed legal error" because he failed to consider any of the credibility determination factors except the claimant's daily activities). Nor did the ALJ "identify what facts he found to be significant, [or] indicate how he balanced the various factors[.]" *Simone v. Astrue*, 08–CV–4884, 2009 WL 2992305, at *11 (E.D.N.Y. Sept.

16, 2009) (Sifton, J.). Nor did the ALJ address how the objective medical evidence was inconsistent with Plaintiff's testimony. For example, as noted above, even though Dr. Murukutla opined in two assessments that Plaintiff could not engage in full-time work, the ALJ failed to fully explore the basis for those assessments. *See Fernandez v. Astrue*, 11–CV–3896 DLI, 2013 WL 1291284, at *18–20 (E.D.N.Y. Mar. 28, 2013) (Irizarry, J.) (ALJ credibility analysis was incorrect where "Plaintiff's complaints of his debilitating and constant pain were supported by objective medical examinations[.]"); *see also Knighton v. Astrue*, 861 F.Supp.2d 59, 69 (N.D.N.Y.2012) (Mordue, J.) (incorporated from Magistrate Judge Bianchini's Report and Recommendation) (remand appropriate where "Plaintiff's credibility will need to be assessed in light of the medical opinion evidence referenced above, as further developed on remand."). While the ALJ notes that treatment records from Plaintiff's doctors "fail to document[ ] significant complaints of findings," this is not sufficient to support the ALJ's credibility assessment by substantial evidence. R. at 30; *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.") (internal citation omitted).

Therefore, the ALJ's lack of specificity and failure to meet SSA requirements for evaluating the credibility of Plaintiff's subjective complaints require REMAND.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART. This matter is hereby REMANDED to the Social Security Administration

for further consideration consistent with this opinion.

**SO ORDERED.**