Daniel VAUGHN, Plaintiff,

v.

Carolyn W. COLVIN, Acting Commissioner, Social Security Administration, Defendant.[1]

No. 12–CV–01504 WGY.

United States District Court, N.D. New York.

Signed July 24, 2015.

---

1. At the time the plaintiff filed his complaint, Michael J. Astrue was the Commissioner of the Social Security Administration. Def.'s Answer, ECF No. 11. Carolyn W. Colvin became the Acting Commissioner of the So- cial Security Administration on February 14, 2013, Def.'s Br. Pursuant Gen. Order 18, ECF No. 16, and has been substituted as the named defendant pursuant to Federal Rule of Civil Procedure 25(d), Fed.R.Civ.P. 25(d).

Daniel C. Vaughn, Madison, NY, pro se.

Sergei Aden, Social Security Administration, New York, NY, for Defendant.

### DECISION & ORDER

WILLIAM G. YOUNG, District Judge[2].

## I. INTRODUCTION

Daniel Vaughn ("Vaughn") brought this case, Compl., ECF No. 1, to challenge the decision of the Social Security Commissioner (the "Commissioner") denying him disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act (the "Act"), *see* Soc. Sec. Admin. R./Tr. ("Admin. R.") 20–27, ECF No. 12.

### A. Procedural History

On February 5, 2008, Vaughn filed an application for disability insurance benefits pursuant to Title II of the Act. *Id.* at 20. He also filed an application for supplemental security income pursuant to Title XVI of the Act on April 2, 2009. *Id.* In both applications, Vaughn listed his disability onset date as February 5, 2007. *Id.* His applications were denied on February 10, 2010. *Id.* at 20, 76–83. Vaughn filed a written request for a hearing on March 12, 2010. *Id.* at 20, 84. The hearing was held on January 18, 2011. *Id.* at 20, 95. On March 28, 2011, the administrative law judge who oversaw the hearing (the "hearing officer") decided that Vaughn was not eligible for either disability insurance benefits or supplemental security income. *Id.*

at 27. Vaughn appealed to the Social Security Administration's Appeals Council, which confirmed the hearing officer's decision on August 1, 2012. *Id.* at 1–6.

On October 3, 2012, Vaughn filed a timely complaint with this Court. Compl. The Commissioner filed an answer, along with a copy of the administrative record, on January 23, 2013. Def.'s Answer, ECF No. 11; Admin. R. Vaughn filed a three-line brief on March 11, 2013 in support of his appeal. Pl.'s Br., ECF No. 14. The Commissioner filed a reply brief on April 25, 2013. Def.'s Br. Pursuant Gen. Order 18 ("Def.'s Br."), ECF. No. 16.

### B. Factual History

In his applications for benefits, Vaughn alleged that several conditions limited his ability to work: a congenital hip deformity with the left leg shorter than the right; cerebral palsy resulting in his whole left side being smaller than the right side and in a lack of coordination; pain in his lower back, hips, knees, and the back of his thighs; attention deficit hyperactivity disorder ("ADHD"); depression; panic and anxiety attacks; and arthritis. *Id.* at 151. Vaughn also alleged that these conditions limited him because he had no coordination, that general movement caused him pain, that he could not sit or stand for long periods of time, and that he could not bend over to pick things up. *Id.*

In a disability report dated October 20, 2009, *id.* at 150–159, and in psychiatric evaluations issued by licensed psychologist Kristen Barry, Ph.D. ("Dr. Barry") dated March 14, 2008, *id.* at 460–464, and January 21, 2010, *id.* at 412–421, Vaughn reported that he completed the eighth grade, was in special education classes, and had earned a GED diploma. *Id.* at 157, 412. He also stated that he last worked in April

---

**2.** Of the District of Massachusetts, sitting by designation. Reassignment Order, ECF No. 17.

2006 doing assembly work for two weeks. *Id.* at 151–152, 412. Before that, Vaughn also worked as a "floor cleaner/janitor," *id.* at 152, 412, 485, and as a crew member in a fast food restaurant, *id.* at 152, 412. In an intelligence evaluation conducted by Dr. Barry on February 21, 2010, Vaughn received a full scale IQ score of 86. *Id.* at 419. Other medical evidence appearing in the record—the relevance of which will be explained in greater detail below—includes a report issued by Dr. Mark Ohl, M.D. ("Dr. Ohl") on July 20, 2010, *id.* at 485–486, and two reports issued by Dr. Kalyani Ganesh, M.D. ("Dr. Ganesh") on March 14, 2008, *id.* at 465–468, and on January 21, 2010, *id.* at 407–410.

## II. LEGAL FRAMEWORK

### A. Standard of Review

■ "The Court's role in reviewing a social security disability case is to determine whether appropriate legal standards were applied and assess whether the administrative officer's findings of fact are supported by substantial evidence." *Aregano v. Astrue*, 882 F.Supp.2d 306, 314 (N.D.N.Y.2012); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009). There is legal error "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards." *Walsh v. Colvin*, No. 12–cv–00933 (WGY), 2014 WL 1239117, at *7 (N.D.N.Y. Mar. 25, 2014) (quoting *Martone v. Apfel*, 70 F.Supp.2d 145, 148 (N.D.N.Y.1999) (Hurd, J.)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir.2013). Thus, the hearing officer's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir.2012) (emphasis in original) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994)) (internal quotation marks omitted). The application of the correct legal standard and the requirement of substantial evidence must both be satisfied. *See Walsh*, 2014 WL 1239117, at *7 (citing *Martone*, 70 F.Supp.2d at 148).

### B. Social Security Disability Standard

■ To be found disabled under the Act, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *id.* § 1382c(a)(3)(A). To determine whether a claimant meets this definition, the Commissioner employs a five-step sequential analysis that answers the following questions: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). The claimant has the burden of proof throughout the sequential evaluation until step five, when the burden shifts to the Commissioner. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir.2014).

## III. THE HEARING OFFICER'S DECISION

In his decision, the hearing officer found at step one that Vaughn has not engaged

in substantial gainful activity since the alleged onset date of February 5, 2007. Admin. R. 22. As to step two of the evaluation, the hearing officer found that Vaughn had the following severe impairments: "degenerative joint disease of the left hip, degenerative joint disease of the right knee, and limited dexterity of the left hand." *Id.* At step three of the analysis, the hearing officer determined that these impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, and Appendix 1. *Id.* at 23.

Before moving to step four, the hearing officer determined that Vaughn had the RFC to perform light work "except only occasional climbing of stairs, no walking more than two hours in a work day, only occasional use of the left hand for fine manipulation," and that he was also "limited to simple unskilled work due to low average IQ." *Id.* At step four, the hearing officer determined that this RFC meant that Vaughn was unable to perform any past relevant work. *Id.* at 26. He noted, however, that transferability of jobs skills was not an issue because Vaughn's "past relevant work [was] unskilled." *Id.* At step five of the analysis, the hearing officer considered Vaughn's age, education, work experience, and RFC and determined that there are jobs that exist in significant numbers in the national economy that Vaughn can perform. *Id.* Based on this finding at step five, the hearing officer concluded that Vaughn has not been disabled from February 5, 2007 through the date of his decision. *Id.*

## IV. ANALYSIS

### A. Vaughn's Brief

In his three-line brief, Vaughn stated that the hearing officer's decision was in-

correct and that he wished "to further pursue this matter," without any other explanation. Pl.'s Br.

General Order No. 18, a local rule in the Northern District of New York, addresses the "filing of answer, administrative record, briefs" and "oral hearing[s] on appeal from social security benefits decision." Soc. Sec. Action & Case Assignment Form & Gen. Order No. 18, ECF No. 3. This order stipulates that a party, even appearing pro se, must submit a brief "setting forth all errors which plaintiff contends entitle [him] to relief" and that "[t]he issue[s] before the Court are limited to the issues properly raised in the briefs." *Id.* at 2. It also states that "the failure to file a brief as required by this order will result in the consideration of [the] appeal without the benefit of plaintiff's arguments and may result in a decision heavily influenced by the Commissioner's version of the facts and subsequent dismissal of [the] appeal." *Id.* at 4.

"It is well-settled that a pro se litigant's pleadings and submissions must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Lucas v. Astrue*, No. 5:06–CV–1100 (LEK/VEB), 2009 WL 3334345, at *4 (N.D.N.Y. Oct. 14, 2009) (Bianchini, M.J.) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.2006)). In a case where the plaintiff is pro se, "General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for pro se litigants." *Dozier v. Colvin*, No. 5:11–CV–00740 (TWD), 2013 WL 1294312, at *6 (N.D.N.Y. Mar. 26, 2013) (Dancks, M.J.). Accordingly, even when the plaintiff fails to file a brief, courts still ought "examine[ ] the record to determine whether the [hearing officer]

applied the correct legal standards and reached a decision based on substantial evidence." *Id.* Therefore, this Court will examine the administrative record to determine whether the hearing officer applied the correct legal standards and whether his decision is supported by substantial evidence, while also considering the arguments developed in the Commissioner's brief.

## B. The Hearing Officer's Decision

Given that Vaughn has not advanced any arguments, the Court will proceed step by step through the hearing officer's decision to determine whether his findings at each step of the disability determination process—and his overall conclusion that Vaughn has not been disabled since his purported disability onset date—are supported by substantial evidence.

### 1. Step One: Substantial Gainful Activity

The hearing officer correctly found that Vaughn had not engaged in substantial gainful activity since the alleged onset date. Admin. R. 22. It is clear from the record that Vaughn last worked in April 2006 doing assembly work and has not worked or been employed since. *Id.* at 151–152, 412.

### 2. Step Two: Severe Impairments

At step two, the claimant has to show that he had a combination of impairments that is medically determinable, severe, and at least twelve months in duration. 20 C.F.R. § 404.1520(a)(4)(ii). Vaughn claimed that several impairments qualified as severe: a congenital hip deformity with the left leg shorter than the right; cerebral palsy resulting in his whole left side being smaller than the right side and a lack of coordination; pain in his lower back, hips, knees, and the back of his thighs; ADHD; depression; panic and anxiety attacks; and arthritis. Admin. R. 151, 407, 465.

In his decision, the hearing officer properly found that Vaughn had the severe impairments of "degenerative joint disease of the left hip, degenerative joint disease of the right knee, and limited dexterity of the left hand." *Id.* at 22. In so finding, the hearing officer specifically looked to Dr. Ohl's and Dr. Ganesh's reports from 2010. *See id.* at 22; *see also id.* at 408–410, 485. Examining the medical evidence in the record, the Court rules that the hearing officer's determination that these impairments are severe is supported by substantial evidence. These impairments "significantly limit[ ] [Vaughn's] physical ... ability to do basic work activities," 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.921, and they meet the duration requirement minimum of a continuous period of at least twelve months, 20 C.F.R. § 404.1509.

As to the alleged limitations of back pain, thigh pain, ADHD, depression, panic and anxiety attacks, and arthritis, the Court first notes that there is no statement about Vaughn's thighs or arthritis in the medical evidence. Regarding the back pain, the hearing officer cited to Dr. Ohl's opinion that this pain was possibly related to Vaughn's hip deformity. Admin. R. 23. Concerning depression, ADHD, panic and anxiety attacks, the hearing officer was reasonable in determining that the record contains no diagnosis or treatment for depression, nor treatment for ADHD. *Id.* at 22–23. These findings result from the psychiatric evaluations issued in 2008 and in 2010 by Dr. Barry. *Id.* at 463 ("He is not on any kind of medications at all now."). Although Dr. Barry diagnosed Vaughn with "[a]djustment disorder with mixed anxiety and depressed mood" in her 2008 psychiatric report, *id.,* she did not give a similar diagnosis in her 2010 psychiatric report and instead stated that

Vaughn appeared "[f]airly relaxed and calm" and not "overly anxious and depressed," *id.* at 414. Therefore, the conclusion of the hearing officer as to these alleged limitations must be confirmed.

■ As for Vaughn's alleged cerebral palsy, the hearing officer looked to the opinion of Dr. Ohl, who concluded on July 20, 2010 that Vaughn "certainly does not seem to have [cerebral palsy] on [the] evaluation [on that date]" and further stated that he did not know "who declared that diagnosis." *Id.* at 485. Relying on this opinion and on the fact that "[t]he medical record contains no current evidence of cerebral palsy or any limitations directly related to cerebral palsy," the hearing officer found cerebral palsy "not to be a severe medically determinable impairment." *Id.* at 23. The Court notes, however, that Dr. Ganesh diagnosed "left-sided cerebral palsy" in her reports from March 2008 and January 2010. *Id.* at 410, 467. Some courts have ruled that the "failure to develop conflicting medical evidence from a treating physician is legal error requiring remand." *Rocchio v. Comm'r of Soc. Sec.*, No. 08 Civ. 3796(JPO), 2012 WL 3205056, at *2 (S.D.N.Y. August 7, 2012) (internal quotation marks omitted). Here, as to cerebral palsy, the hearing officer failed to consider and compare Dr. Ganesh's opinions with Dr. Ohl's contrary opinion. While this failure could possibly constitute legal error, the Court notes that the hearing officer properly considered cerebral palsy in Vaughn's RFC assessment. *See* Admin. R. 24.[3] As the Commissioner correctly states, "even assuming that there was a deficiency in the [hearing officer]'s step two analysis, because the [hearing

officer] proceeded and properly considered the [cerebral palsy] evidence beyond step two of the sequential analysis, there is no basis to disturb the ultimate conclusion that [Vaughn] was not disabled." Def.'s Br. 18 (citing *Stanton v. Astrue*, 370 Fed. Appx. 231, 233 n. 1 (2d Cir.2010); *Bender v. Astrue*, No. 09–CV–880 (TJM/VEB), 2010 WL 5175023, at *4 (N.D.N.Y. Nov. 29, 2010) (Bianchini, M.J.)). Thus, because the hearing officer considered Vaughn's cerebral palsy in determining his RFC—which ultimately proved dispositive at step five—the failure to deem the cerebral palsy severe at step two was harmless. Accordingly, no remand for analysis on this point is necessary.

### 3. Step Three: The Listed Impairments

At step three, the hearing officer decided that Vaughn's impairments did not meet or medically equal the criteria of the listed impairments in 20 C.F.R. Part 404, Subpart P, and Appendix 1. Admin. R. 23. Specifically, he analyzed whether Vaughn's impairments met Listing 1.02A, which requires evidence of major dysfunction of joints due to any cause "characterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) . . . [w]ith involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively." 20 C.F.R. Part 404, Subpart P,

---

**3.** Specifically, at the step four of his evaluation, the hearing officer referred to an emergency consultation report issued at the Community Memorial Hospital on July 27, 2004 by Elizabeth Tucker, D.O. *Id.* at 243–244. In this report, which was issued following a vehicle accident, she stated that Vaughn had a history of cerebral palsy (described as "mild and stable"). *Id.* at 244. Citing this report for Vaughn's RFC assessment, the hearing officer reported a "history of mild cerebral palsy . . . described as stable." *Id.* at 24.

Appendix 1, Listing 1.02A. In this case, Vaughn's impairments do not meet the criteria of this listing because the medical evidence shows that Vaughn is able to walk. Admin. R. 410, 468. In particular, Dr. Ganesh stated in her reports that Vaughn only had a "mild limitation to walking and climbing." *Id.*

#### 4. RFC Assessment

The hearing officer determined that Vaughn had the RFC to perform light work except with "only occasional climbing of stairs, no walking more than two hours in a work day, [and] only occasional use of the left hand for fine manipulation." *Id.* at 23. The hearing officer added that Vaughn was "limited to simple unskilled work due to low average IQ." *Id.*

Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). The relevant regulations stipulate that the claimant's "impairments, and any related symptoms, such as pain, may cause physical and mental limitations that affect what [he] can do in a work setting. [The RFC] is the most [the claimant] can still do despite [his] limitations. [The hearing officer] will assess [the RFC] based on all the relevant evidence in [the] record." 20 C.F.R. § 404.1545(a); *see also Sweat v. Astrue,* No. 08–CV–1108 (FJS/VEB), 2011 WL 2532932, at *5 (N.D.N.Y. May 23, 2011) (Bianchini, M.J.) (holding that RFC is defined as "what an individual can still do despite his or her limitations" and is "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting").

In determining whether the claimant is disabled, the hearing officer considers all the symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence, 20 C.F.R. § 404.1529; *id.* § 416.929, and opinion evidence, *id.* § 404.1527; *id.* § 416.927. Here, the hearing officer considered Vaughn's medical records as well as his subjective testimony regarding his hip problems, back pain, and knee issues. Admin. R. 24. This Court confirms the hearing officer's finding that Vaughn's medically determinable impairments could reasonably be expected to cause the alleged symptoms. *Id.*

■ Once the hearing officer makes such a finding, he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's pain contentions are not substantiated by the objective medical evidence, the [hearing officer] must engage in a credibility inquiry," *Meadors v. Astrue,* 370 Fed.Appx. 179, 183 (2d Cir.2010).

Here, the hearing officer engaged in this credibility inquiry by comparing Vaughn's subjective statements regarding the limitations caused by his impairments to the objective evidence in the record. Admin. R. 24. In so doing, he examined X-rays of Vaughn's left hip and his left knee. *Id.* The hearing officer also considered the physical examination conducted by Dr. Ganesh in 2010. *Id.* He looked to the doctor's opinion that Vaughn had "no limitation for sitting [or] standing," "a mild limitation to walking and climbing," and despite "some clumsiness in the left hand," the ability "to use the hand for a fair degree." *Id.* at 410. Since the record contains no opinions from any treating physician regarding Vaughn's functionality, the hearing officer gave significant weight to Dr. Ganesh's physical examination. *Id.* at 25. The hearing officer also relied on the psychiatric evaluation issued by Dr. Barry in 2010. *Id.* In particular, he noticed that Vaughn was "able to dress, bathe, and groom himself" and that he "did help a little" with "cooking, cleaning,

or laundry." *Id.* Although Vaughn does not handle money or drive, he socializes with friends, has fair family relationships, and makes music. *Id.* As to work, Dr. Barry determined that Vaughn was able "to follow and understand simple directions and instructions" and "to maintain his attention and concentration," and she further stated that Vaughn appeared to function "in the low average range of intelligence." *Id.* Lastly, the hearing officer referred to the intelligence evaluation issued in 2010, which stated that Vaughn was "relaxed and comfortable throughout the testing," displayed fair attention and concentration and no emotional distress, and achieved a full scale IQ of 86. *Id.*

■ The hearing officer ultimately determined that Vaughn's subjective statements regarding his limitations were inconsistent with the fact that "treating physicians did not place any functional restrictions on Vaughn's activities that would preclude light work." *Id.* The Court agrees with the hearing officer that Vaughn's daily activities are consistent with the performance of light work—and that this means that his statements regarding his limitations are not fully credible. *Id.* In particular, Vaughn testified that he was "unable to stand for long periods of time due to his hip problems," that he "hardly does anything around the house because his sisters do pretty much everything," and that "his knees hurt like grinding bone on bone." *Id.* at 24. Dr. Ganesh's opinion, however, clearly states that Vaughn had "no limitation for sitting, standing" and only "a mild limitation to walking and climbing." *Id.* at 410. Given

these inconsistencies, the hearing officer correctly asserted that Vaughn's "testimony regarding his functional limitations significantly exceed[s] the medical evidence." *Id.* at 25. Moreover, despite the fact that Vaughn had attempted some minor vocational rehabilitation, the hearing officer found that his poor work history "detracts from his credibility regarding motivation to work." *Id.*

As a result, the RFC assessment made by the hearing officer must be confirmed. Vaughn is able to perform light work limited by the occasional climbing of stairs, walking no more than two hours because of his hip and knee injuries, and decreased use of the left hand for fine manipulation.

### 5. Steps Four and Five: Past and Future Work

■ After determining Vaughn's RFC, the hearing officer found at step four that Vaughn was unable to perform any past relevant work. *Id.* at 26. He also noted that Vaughn was defined as a "younger individual" at the onset date because he is nineteen years old and that he had a "high school education" and was "able to communicate in English." *Id.* The hearing officer also decided that "transferability of job skills [was] not an issue" because Vaughn's "past relevant work [was] unskilled." *Id.* After examining the record, the Court confirms the hearing officer's position that Vaughn is unable to perform any past relevant work, especially regarding his past relevant work as a janitor. Additionally, the record contains substantial evidence supporting the hearing officer's findings regarding Vaughn's education, *id.* at 412, 417, 460,[4] his ability to communicate in

---

4. Vaughn completed the eighth grade and obtained a GED diploma. Admin. R. 412, 460. "[T]he numerical grade level that [a claimant] completed in school may not represent [his] actual educational abilities." 20 C.F.R. § 404.1564; *id.* § 416.964. "The term edu-

cation also includes how well you are able to communicate in English." *Id.* § 404.1564; *id.* § 416.964. In evaluating a claimant's educational level, the hearing officer looks to criteria such as the capacity in reading, writing, speaking and understanding English, rea-

English, *id.* at 414, 462, that he is a "young[ ] individual", 20 C.F.R. § 404.1563; *id.* § 416.963, and that transferability of his jobs skills are not an issue, *see* Admin. R. 152.

Considering Vaughn's age, education, work experience, and RFC, the hearing officer then ruled at step five that there are jobs that exist in significant numbers in the national economy that Vaughn can perform, meaning that Vaughn is not disabled and is not entitled to benefits. *Id.* at 26. In so doing, the hearing officer referred to the Medical–Vocational Guidelines (the "guidelines"), which are used in "cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200(a). If the claimant can perform all or substantially all of the exertional demands at the level of exertion in question,[5] which here is light work, the guidelines direct a conclusion of "disabled" or "not disabled" depending upon the claimant's specific vocational profile. SSR 83–11. Alternatively, when the claimant cannot perform substantially all of the exertional demands of work at the level of exertion in question or has nonexertional limitations, the guidelines are used as a framework for decisionmaking. SSR 83–12; SSR 83–14. In this latter case, when "[a] particular additional exertional or nonexertional limitation may have very little effect on the range of work remaining that an individual can perform[, t]he person … comes very close to meeting a table rule which directs a conclusion of 'Not disabled.'" SSR 83–14.

■ Here, the hearing officer referred to Rule 202.20 of the Medical–Vocational Guidelines. Admin. R. 26. Rule 202.20 states that "younger individual[s]" with a high school education and a previous history of unskilled work who maintain the RFC to perform light work are deemed not disabled. 20 C.F.R. Subpart P, Appendix 2, § 202.20. Because this profile matches Vaughn's profile, the hearing officer correctly determined that if Vaughn "had the [RFC] to perform the full range of light work," a finding of "not disabled" would be directed by this section. Admin. R. 26. In this case, Vaughn has additional exertional limitations and nonexertional limitations to the performance of light work, in that he can perform light work "except only occasional climbing of stairs, no walking more than two hours in

---

soning, and performing arithmetic. *Id.* Here, looking to the intelligence evaluation issued in 2010 by Barry, the Court notes Vaughn's full scale IQ of 86 and that:

> [Vaughn's] verbal abilities are falling at the high end of the borderline range. Nonverbal abilities in the low average range. His Working Memory and Processing Speed fall in the average range. Visual constructural skills are average. Expressive vocabulary and general fund of verbal information is average. Short-term auditory memory and numerical reasoning abilities are average. Visuomotor efficiency is average. His abstract categorical reasoning is significantly below average. At this time, his math skills

> are good. Reading and written language abilities are fair to good.

Admin. R. 419–20.

5. "An exertional limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e., sitting, standing, walking, lifting, carrying, pushing, and pulling)," while a "nonexertional limitation is one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain." *Rosa v. Callahan*, 168 F.3d 72, 78 n. 2 (2nd Cir.1999).

a work day, [and] only occasional use of the left hand for fine manipulation," and he is limited to unskilled work due to low average of IQ. *Id.* at 23. The hearing officer, however, ultimately found—and the Court agrees—that Vaughn's additional limitations "have little or no effect on the occupational base of unskilled light work" because Vaughn does not have any limitations related to lifting, carrying heavy objects, standing, or sitting and has only minimal limitations as to walking. *Id.*

In conclusion, the Court confirms the hearing officer's decision that a finding of "not disabled" is appropriate in this case and that Vaughn has not been under a disability from February 5, 2007 through the date of the decision at issue.

## V. CONCLUSION

For the aforementioned reasons, the decision of the Commissioner is AFFIRMED.

**SO ORDERED.**