**Jeffrey Mark DEAN, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner, Social Security Administration, Defendant.**

**CIVIL ACTION NO. 14-cv-00379-WGY**

United States District Court,
N.D. New York.

Signed October 3, 2016

Filed October 3, 2016

Mary Martha Withington, Legal Aid Society of Northeastern, Saratoga Springs, NY, for Plaintiff.

Elizabeth D. Rothstein, Social Security Administration, New York, NY, for Defendant.

**MEMORANDUM & ORDER**

WILLIAM G. YOUNG, United States District Judge [1]

**I. INTRODUCTION**

Jeffrey Mark Dean ("Dean") brought this action challenging the decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying his application for a period of disability, disability insurance, and Supplemental Security Income benefits (together, "benefits") under Title II and Title XVI of the Social Security Act ("the Act").

**A. Procedural History**

Dean applied for benefits on January 28, 2011, claiming he became disabled on February 15, 2008. Admin. R. 11.[2] Dean's ap-

---

1. Of the District of Massachusetts, sitting by designation. ECF No. 15.

2. The administrative record spans multiple docket entries, labeled ECF Nos. 11–1

plications were initially denied on June 21, 2011, after which Dean requested a hearing. Id. Following a hearing on May 15, 2012, the hearing officer[3] denied Dean's applications in a written decision issued on September 17, 2012. Id. at 8, 11. Dean timely appealed to the Agency Appeals Council, which denied his request for review on February 3, 2014. Id. at 2.

On April 4, 2014, Dean filed a complaint in federal district court challenging the Commissioner's denial of benefits. Compl., ECF No. 1. The Commissioner filed an answer, Def.'s Answer, ECF No. 10, as well as a transcript of the administrative record, Admin R., in October 2014. On November 21, 2014, Dean filed a memorandum explaining his challenges to the Commissioner's decision and requesting that such decision be reversed or vacated. Pl.'s Br., ECF No. 13. The Commissioner filed a memorandum in opposition on January 1, 2015, requesting that its decision be affirmed. Def.'s Br. Pursuant General Order No. 18 ("Def.'s Br."), ECF No. 14.

### B. Factual Background[4]

Dean was born in 1965 and resides in Round Lake, New York with his mother. Admin. R. 30, 31. He has a high school diploma and is trained in building trades. See Id. at 31, 32. During his time in the workforce, Dean was employed as an assembler, a dish washer and food preparer in a restaurant, and a stocker in a supermarket. Id. at 175. His last date of employment was November 15, 2009. Id. at 174.

In his testimony, Dean claims to suffer from chronic pain in his back, neck, shoulders, knees, ankles, and thighs. Id. at 30. Additionally, he alleges that he suffers from mental health impairments including bipolar disorder, depression, anxiety and panic disorder, attention deficit disorder and schizo-affective disorder. Compl. ¶ 16. Dean also has a long history of alcohol abuse. Admin. R. 31.

## II. ANALYSIS

### A. Legal Framework

This Court reviews the decision of the Commissioner pursuant to 42 U.S.C. § 405(g). When reviewing the Commissioner's decision to deny social security benefits "[t]he Court's role . . . is to determine whether appropriate legal standards were applied and assess whether the administrative officer's findings of fact are supported by substantial evidence." Vaughn v. Colvin, 116 F.Supp.3d 97, 100 (N.D.N.Y.2015) (internal quotation marks and citations omitted); see also Moran v. Astrue, 569 F.3d 108, 112 (2d Cir.2009). A legal error exists "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards." Vaughn, 116 F.Supp.3d at 100 (internal quotation marks and citations omitted). "[S]ubstantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir.2013) (internal quotation marks and citations omitted).

---

through 11–9 and 12. For the sake of simplicity, the Court cites page numbers in the continuously paginated record as a whole, omitting reference to particular ECF numbers.

**3.** For an explanation of the Court's use of this nomenclature, see Vega v. Colvin, 164 F.Supp.3d 249, 251–52 n. 1 (D.Mass.2016).

**4.** Dean in effect challenges the hearing officer's application of the relevant legal framework to the facts of this case, rather than specific factual findings. See generally Compl.; Pl.'s Br. Accordingly, the Court sketches a brief overview of the background facts, with further factual discussion incorporated as necessary into the Court's analysis of Dean's legal claims, see infra Part II-B.

A claimant is entitled to social security benefits if he or she is under a disability, 42 U.S.C. § 423(a)(1)(A), defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months[,]" id. § 423(d)(1)(A). The five-step inquiry that governs social security disability cases is well-known and is explained in detail elsewhere. See, e.g., McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir.2014) (citing Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir.2008); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v)). In the sections that follow, the Court addresses Dean's particular challenges to the application of this framework.

### B. Dean's Challenges

Dean raises three substantive challenges to the hearing officer's decision, which was adopted in full by the Commissioner. See Compl. ¶¶ 23-26; Pl.'s Br. 17-23.[5] First, he argues that the hearing officer erred in failing to conclude that Dean's mental health conditions do not equal the impairments described in Sections 12.04 and 12.06 of the regulations, 20 C.F.R. Pt. 404, Subpt. P, App'x 1. Compl. ¶ 23; Pl.'s Br. 17-18. Second, Dean challenges the hearing officer's evaluation of Dean's credibility with respect to his complaints of disabling pain. Compl. ¶ 24; Pl.'s Br. 18-22. Third, he claims that both the hearing officer's determination of Dean's residual functional capacity and reliance on interrogatories

from a vocational expert were flawed. Compl. ¶ 25; Pl.'s Br. 22-23.

### 1. Listings 12.04 and 12.06

■ Dean argues that the hearing officer erred in declining to find that Dean's impairments meet the criteria of the impairments listed at 12.04 and 12.06 in the Appendix to the Social Security regulations, 20 C.F.R. Pt. 404, Subpt. P, App'x 1. See Pl.'s Br. 17-18. The Commissioner, meanwhile, maintains that the hearing officer correctly determined that Dean's impairments do not satisfy all of the criteria set forth in those listings. See Def.'s Br. 5-9.

The question of whether a claimant satisfies the criteria of one of the impairments listed in the regulations arises at step three of the five-step disability determination—i.e., after the hearing officer has determined, at steps one and two, that a claimant has not engaged in substantial gainful activity during the period of alleged disability and suffers a severe impairment. See 20 C.F.R. §§ 404.1520, 416.920. The regulations provide that, if a claimant "ha[s] an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)[,]" such claimant is disabled, regardless of his or her "age, education, and work experience." 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant bears the burden of demonstrating that he suffers from a particular listed impairment. See, e.g., Shaw v. Chater, 221 F.3d 126, 132 (2d Cir.2000).

---

**5.** Dean's fourth argument, Compl. ¶ 26; Pl.'s Br. 23-25, is a sort of catch-all challenge claiming a lack of substantial evidence to support the hearing officer's decision. The Court can only affirm the hearing officer's decision if it concludes that his findings are supported by substantial evidence—that is, the question of whether there exists substan-

tial evidence to support the hearing officer's decision underlies the Court's entire analysis and each of the three more precise claims that Dean raises here. Accordingly, the Court discusses this argument not as a separate challenge but rather as part and parcel of Dean's other challenges.

Listing 12.04 covers "affective disorders," while listing 12.06 pertains to "anxiety-related disorders." 20 C.F.R. Pt. 404, Subpt. P, App'x 1. Each contains paragraphs A, B, and C criteria, where paragraph A provides "a set of medical findings," paragraph B provides "a set of impairment-related functional limitations," and paragraph C provides "additional functional criteria." Id. A claimant is disabled by virtue of satisfying the criteria in one of these listings only if his impairment meets the paragraph A criteria and either the paragraph B criteria or the paragraph C criteria.

The dispute here centers on whether the paragraph B criteria for listings 12.04 and 12.06 are met.[6] For each of the mental impairments contained in section 12 of the appendix—including the two listings at issue here—paragraph B requires that the claimant have a condition that produces at least two of the following limitations:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. Pt. 404, Subpt. P, App'x 1.

The hearing officer here stated that he "considered all relevant listings." Admin. R. 14. Finding that Dean suffered only "mild" and "moderate" limitations and no more than two episodes of extended decompensation, he concluded that Dean did not meet the paragraph B criteria for any listed mental disorders. Id.

Dean argues, in fairly general terms, that the medical evidence demonstrates that he has the "classic symptoms" of "depressive syndrome" and "an anxiety related disorder," and that these impairments "have markedly interfered with [his] abilities to engage in basic [activities of daily living], with his abilities to engage in social functioning and with his abilities to pay attention and maintain concentration, persistence and pace." Pl.'s Br. 17. Dean explains that he sometimes has difficulty leaving his house, that shopping has made his anxiety worse, and that he has gone to the hospital in order to obtain sedatives to alleviate his symptoms. Id. at 18.

Notwithstanding these contentions, Dean fails to point to any particular medical evidence (indeed, any evidence at all) in the record to support the "marked" restrictions he claims he suffers as a result of his depression and anxiety and that are required in order to satisfy the paragraph B criteria. By contrast, the hearing officer's conclusion that Dean's impairments do not meet the listings is consistent with the opinion of medical consultant Dr. L. Hoffman. See Admin. R. 502-19. Other evidence the hearing officer cites elsewhere in his opinion, such as Dean's global assessment of functioning scores in the 60s, Admin. R. 17, also supports this conclusion. Because Dean has failed to meet his burden of proving that his depression and anxiety produce the specific functional limitations set forth in listings 12.04 and 12.06, and there exists substantial evidence to support the hearing officer's conclusion that his impairments do not satisfy the relevant criteria, the Court will not reverse or vacate the Commissioner's denial of benefits on this ground.

---

6. The hearing officer does not indicate whether the paragraph A criteria are met, but he need not have, since he concluded that neither the paragraph B nor paragraph C criteria are satisfied. See Admin. R. 14-15. Dean does not argue that his impairments satisfy the paragraph C criteria.

## 2. Credibility Analysis

■ Dean next argues that the hearing officer erred in "failing to give appropriate weight to [Dean's] subjective complaints of disabling back, neck, shoulder, knee and ankle pain caused by arthritis, degenerative joint disease and injury."[7] Pl.'s Br. 18. The Commissioner maintains that the hearing officer's evaluation of Dean's credibility was proper. Def.'s Br. 9-12.

■ Social security regulations set out a two-step inquiry for evaluating a claimant's pain and other symptoms. See 20 C.F.R. §§ 404.1529, 416.929; Genier v. Astrue, 606 F.3d 46, 49 (2d Cir.2010). First, the hearing officer determines whether the claimant suffers a "medically determinable impairment that could reasonably be expected to produce symptoms alleged." Astrue, 606 F.3d at 49.[8] If the hearing officer answers this in the affirmative, he proceeds to "consider 'the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record[,]" id. (quoting 20 C.F.R. § 404.1529(a)) (alterations omitted), and further, "the extent to which the [claimant's] symptoms limit the claimant's capacity for work[,]" Cichocki v. Astrue, 534 Fed.Appx. 71, 75 (2d Cir.2013) (internal citation omitted). This second step involves consideration of "all of the available evidence, including [a claimant's] history, the signs and laboratory findings, and statements from [the claimant], [the claimant's] treating or nontreating source, or other persons about how [the claimant's] symptoms affect [him or her]." 20 C.F.R. § 416.929(c)(1). The regulations set forth seven specific factors relevant to a claimant's complaints of pain:

(i) [the claimant's] daily activities;

(ii) [t]he location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;

(iii) [p]recipitating and aggravating factors;

(iv) [t]he type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;

(v) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;

(vi) [a]ny measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

Id. § 416.929(c)(3); Cichocki, 534 Fed. Appx. at 76. A hearing officer need not explicitly consider each of the above fac-

---

**7.** Dean also argues, in the same section of his brief, that the hearing officer erred "in failing to consider [Dean's] physical and mental health impairments in combination with one another." Pl.'s Br. 18. To the extent this argument bears on the hearing officer's step-two determination of whether Dean's impairments are severe, see id. at 21 (citing regulations that govern determination of medically severe impairments or combination of impairments), it is a non-starter, because the hearing officer in fact found that each of the impairments from which Dean claims he suffers constitute severe impairments, see Admin. R. 13. To the extent Dean argues that the hearing officer failed to consider the combined effect of his impairments in determining Dean's residual functional capacity, that argument is discussed infra.

**8.** "That requirement stems from the fact that subjective assertions of pain alone cannot ground a finding of disability." Genier, 606 F.3d at 49.

tors, so long as his explanation "and the record evidence permits [the Court] to glean the rationale of the [hearing officer's] decision." Cichocki, 534 Fed.Appx. at 76.

The hearing officer purported to apply the above framework here. See Admin. R. 15. He found that Dean suffered medically determinable impairments, but concluded that Dean's "own reports and allegations [are] only partially credible." Id. at 19. The hearing officer found, for example,

> statements, such as [Dean's] testimony of extreme difficulty getting dressed, are inconsistent with examination reports contained in the record noting no difficulty in the claimant's ability to change for his examination. Certainly, [Dean] is experiencing pain; however, his complaints of the severity and limiting effects of his pain at [the] hearing are disproportionate to the clinical findings, objective medical test results, and medical opinion evidence of record[.]

Id. Dean seeks to rebut the hearing officer's conclusion primarily by pointing to medical evidence in the record that demonstrates the severity of his impairments. The mere existence of contrary evidence, however, is not ground for disrupting the hearing officer's finding. See Genier, 606 F.3d at 49 ("Even where the administrative record may also adequately support contrary findings on particular issues, the [hearing officer's] factual findings must be given conclusive effect so long as they are supported by substantial evidence." (internal quotation marks and citation omitted)).

Here, there is substantial evidence to support the conclusion that certain of Dean's statements regarding the disabling effects of his pain are not wholly credible. On more than one examination during the alleged period of disability, Dean apparently presented with no pain. See Admin. R. 298, 325. He demonstrated, on certain doctor's visits, an ability to move his extremities without difficulty, id. at 325, full or nearly full ranges of motion, id. at 330, 353–54, and no major problems with tasks such as standing, walking, squatting, changing, and getting on and off an exam table, id. at 352; see also id. at 354 (observing no "objective limitations to ... gross motor activities" nor "[activities of daily life] on examination today"). Even where he presented with more pain and a more limited range of motion, such as in a May 2011 examination by Dr. Joseph Prezio, see id. at 462–65, the doctor noted only "mild restriction for standing, walking, squatting, kneeling, [and] doing any heavy lifting or bending," id. at 465. Furthermore, Dean's x-rays were largely normal or unremarkable. See id. at 441–44, 447–48, 466–67.

Given the evidence on record, the hearing officer's role as factfinder, and the Court's deferential stance on review, the Court concludes that there was no error in the hearing officer's evaluation of Dean's credibility with respect to his complaints of pain. See, e.g., Brault v. Soc. Sec. Admin. Comm'r, 683 F.3d 443, 448 (2d Cir.2012) (noting that the substantial evidence standard is "very deferential" and "means once a[ ] [hearing officer] finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise.") (internal quotation marks and citations omitted).

### 3. Residual Functional Capacity and Corresponding Disability Determination

■ Dean argues that the hearing officer's residual functional capacity and disability determinations are flawed insofar as they fail to account for the combination of Dean's impairments. Pl.'s Br. 21. Further, he argues that the hearing officer's reliance on vocational expert opinion was error since that expert did not hear Dean's

testimony, and based his opinion on an incomplete description of Dean's limitations. See id. at 22–23. The Commissioner contends that the hearing officer properly evaluated the combined effect of Dean's impairments in determining Dean's residual functional capacity, and moreover, appropriately considered all of the record evidence in making his residual functional capacity determination. Def.'s Br. 12-16.

A claimant's residual functional capacity is "the most [the claimant] can still do despite [his or her] limitations" stemming from his or her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Assessment of residual functional capacity necessarily involves consideration of "all of [a claimant's] medically determinable impairments" and the claimant's "ability to meet the physical, mental, sensory, and other requirements of work," in light of his or her limitations. Id. § 416.945(a)(2)–(4).

The hearing officer concluded that Dean "has the residual functional capacity to perform light work … except that he is limited to working in a job involving no more than occasional decision making, changes in work setting and interactions with others." Admin. R. 15. He presented this residual functional capacity determination to vocational expert Salvatore Garozzo, who found that a hypothetical individual with Dean's relevant characteristics could perform Dean's past work as an assembler, as well as a variety of other jobs. Id. at 19. Based on this, the hearing officer concluded that Dean is not disabled. Id. at 19–20.

■ As with his arguments discussed supra, Dean challenges the hearing officer's determination primarily by emphasizing the severity of his impairments and arguing, in effect, that certain evidence favorable to his position ought take precedence. See Pl.'s Br. 22-23 (arguing that consideration of Dean's "chronic pain in combination with [his] affective disorders and related disorders" would have yielded a finding of disabled and stating that, "[a]t 49 years of age, with a high school education, vocational training as a mason, no computer skills, problems with concentration, persistence and pace, paranoid thinking and tendency to isolate from others, daily panic attacks and inability to deal with the stresses of life and chronic pain, [Dean] lacks the [residual functional capacity] to engage in work at any exertional level"). But this is not de novo review; the question is not whether there exists evidence to support the outcome Dean seeks, but rather whether there exists substantial evidence to support the hearing officer's conclusion. As the Second Circuit recently put it:

> We conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied …. If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.

McIntyre, 758 F.3d at 149 (internal quotation marks and citations omitted). Thus, the mere existence of evidence that runs counter to the hearing officer's conclusion is insufficient.

Nonetheless, on the record before the Court, and on the basis of the hearing officer's proffered rationale, the Court cannot conclude that the hearing officer's residual functional capacity determination reflects a full and proper consideration of the record evidence. More particularly, the Court holds that there is not substantial evidence to support the hearing officer's findings concerning Dean's mental limitations.

In explaining his assessment of Dean's credibility in connection with the residual

functional capacity determination, the hearing officer states that, "[i]n terms of [Dean's] mental functioning, the record indicates that he is capable of a very high degree of functioning given cessation from alcohol use." Admin. R. 19. To support this statement, he cites a report of Dr. Annette Payne. See id. This is somewhat confusing given the hearing officer's earlier statement that he was largely discrediting Dr. Payne's opinion due to its vagueness, but he does note that he affords the opinion "some weight[.]" Id. at 18. Nothing in Dr. Payne's report, however, suggests that Dean can function at a high level mentally assuming he stops drinking. See Admin. R. 360-64.[9] What Dr. Payne's report does appear to establish is that Dean's alcoholism meaningfully interferes with his mental functioning. See id. at 363. But it does not follow from this that, were he to cease drinking, he would be capable of functioning at a high level.

The hearing officer further cites to records from the Saratoga County Alcohol and Substance Abuse Services to support his conclusion that, but for Dean's alcoholism, his mental functioning abilities are "very high." Id. at 19. These records, too, indicate that Dean has a serious alcohol problem, but it is unclear how they demonstrate that Dean would be highly capable mentally were he to stop drinking, and the hearing officer does not explain this conclusion.

What is more, the hearing officer states that Dean's alcoholism "is not material" to the decision here because Dean "retains the residual functional capacity described

above even considering his substance abuse[,]" id. yet the hearing officer's evaluation of Dean's capacity to function mentally appears to be premised on Dean's ceasing drinking. See id. (observing that Dean "is capable of a very high degree of functioning given cessation from alcohol use"); id. at 17 (reading Dr. Payne's opinion to "indicate[ ] that cessation of alcohol use would result in considerable improvement in his ability to perform work-related limitations of function").

This type of flawed logic—or, at minimum, opaque reasoning—plagues other portions of the hearing officer's discussion of Dean's mental impairments and the functional implications thereof. For example, the hearing officer looks to records from the Albany County Department of Mental Health during a period of incarceration, id. at 365–68, which provide that Dean "was fine with the information" that he would not receive mental health treatment and "denies any mental health symptoms[,]" id. at 368, to support his conclusion that Dean "is capable of functioning at a level commensurate with only mild to moderate limitations with appropriate treatment[.]" Id. at 17. The hearing officer offers no explanation to clarify the seemingly tenuous connection here. Furthermore, the hearing officer largely rejected the opinions of consulting medical providers Dr. Annette Payne and Dr. Kerry Brand, finding them to be "vague"[10] and "speculat[ive]," respectively. Id. at 17–18. Under these circumstances, the hearing officer ought have contacted these doctors to seek clarification. See, e.g., Selian, 708

---

9. Indeed, Dr. Payne's evaluation states that Dean "was very emotional during the exam[,]" had poor social skills, and was depressed. Admin. R. at 362. It further indicates that Dean's attention and concentration, as well as recent and remote memory skills, were impaired, that "[h]is cognitive functioning was probably in the low average range,"

and that his insight and judgment were poor. Id. at 362–63.

10. In fact, the hearing officer stated that Dr. Payne's use of the term "significant" to describe certain of Dean's functional limitations was "not a vague term[,]" Admin. R. 17, but in context this appears to be a typographical or clerical error. The decision reads: "Unfor-

F.3d at 421 (citing 20 C.F.R. § 404.1520b(c)(1)). Instead, the hearing officer adopted the opinion of consulting source Dr. Hoffman, whose report is arguably more conclusory than those of Dr. Payne and Dr. Brand.[11] Compare Admin. R. 502-19, with id. at 360–64, and id. at 468–73.

■■■ While, as a general matter, a hearing officer has broad discretion to make factual findings and credibility determinations, the hearing officer here fell short of his obligations in evaluating the functional effects of Dean's mental impairments. Cf., e.g., Genier, 606 F.3d at 50 ("Because the [hearing officer's] adverse credibility finding ... was based on a misreading of the evidence, it did not comply with the [hearing officer's] obligation to consider 'all of the relevant medical and other evidence[.]'" (quoting 20 C.F.R. § 404.1545(a)(3))). Having concluded that the hearing officer's residual functional capacity determination is not supported by substantial evidence, it follows that the hearing officer's reliance on the opinion of vocational expert Garozzo is error, since that opinion was based on the hearing officer's flawed residual functional capacity determination. See, e.g., Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir.1981) ("The vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job.").

## III. CONCLUSION

Based on the foregoing analysis, Dean's complaint for relief, ECF No. 1, is granted in part. The decision of the Commissioner is vacated, and the case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

---

tunately, Dr. Payne's assessment is of little probative value in this case because 'significant' is not a vague term that does not have a standard definition within the framework of Social Security Disability rules and regulations." Id.; see also id. at 18 (affording "some weight to the vague opinion of Dr. Payne ... to the extent that [it is] consistent with the residual functional capacity described above.").

11. For example, while Dr. Hoffman states that Dean "is able to understand, execute, and remember simple and detailed instructions and work like procedures[,]" he does not indicate the basis of this conclusion, and in fact Dean apparently struggled during Dr. Hoffman's examination. See Admin. R. 518 ("[Mental Status Examination] was positive for difficulty performing serial 3s and difficulty on delayed recall."). By contrast, Dr. Payne's report describes Dean's memory as "[i]mpaired" and notes that Dean "recalled 3 out of 3 objects immediately and 0 out of 3 after a five minute delay." Id. at 362.