**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2009

(Argued: March 9, 2010                                    Decided: May 27, 2010)

Docket No. 09-3991-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

CRAIG J. GENIER,

    *Plaintiff-Appellant*,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    *Defendant-Appellee*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: LEVAL, SACK, and WESLEY, *Circuit Judges*.

   Appeal from the judgment of the United States District Court for the Northern District of New York (Peebles, *M.J.*) affirming a denial of benefits to the plaintiff by the Commissioner of Social Security.  We vacate the judgment and remand for further proceedings.

           MARK SCHNEIDER, Plattsburgh, New York, for
           *Appellant*.

           KRISTINA COHN, Special Assistant U.S. Attorney
           (Stephen P. Conte, Acting Regional Chief Counsel,

Office of the General Counsel, Social Security Administration, *on the brief*), *for* Andrew T. Baxter, Acting United States Attorney, Northern District of New York, Syracuse, New York, for *Appellee*.

PER CURIAM.

Plaintiff Craig Genier, an applicant for disability benefits under the Social Security Act, 42 U.S.C. § 401 *et seq.* ("the Act"), appeals from the judgment of the United States District Court for the Northern District of New York (Peebles, *M.J.*),* which affirmed the agency's denial of benefits. Genier argues that the administrative law judge who rendered the decision of the Commissioner erred by failing to consider all of the relevant evidence. We agree. We accordingly vacate the judgment of the district court and remand the case for further proceedings.

**BACKGROUND**

Genier filed an application for Supplemental Security Income and Disability Insurance Benefits under the Act on April 4, 2006. He alleged that he had been unable to work since August 13, 2005, due to his morbid obesity and related ailments, including, at various times, severe sleep apnea, back pain, and knee pain. The Commissioner denied his application for benefits, and Genier requested a hearing before an administrative law judge ("ALJ"). The ALJ conducted a hearing and on May 8, 2008, issued a decision denying Genier's claims. That decision became the final decision of the Commissioner when the Appeals Council denied Genier's request for review on September 8, 2008.

---

* Upon the consent of the parties, the case was referred to a magistrate judge, who conducted the proceedings and decided the case pursuant to 28 U.S.C. § 636(c)(1).

Genier commenced an action in the United States District Court for the Northern District of New York on September 30, 2008, seeking review of the denial of benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c). The district court affirmed the agency's decision, finding that it was supported by substantial evidence, on September 22, 2009.

*Evidence*

Genier asserted that he became unable to work in August 2005 as a result of morbid obesity and several related impairments, including sleep apnea and mobility and breathing problems. At the time he stopped working, Genier was twenty-seven years old and weighed approximately 400 pounds.

On May 11, 2006, Genier filled out a claimant questionnaire for the Division of Disability Determinations in the New York State Office of Temporary and Disability Assistance, the state agency charged with adjudication of disability claims on behalf of the federal government. On the questionnaire, Genier described his daily activities. He wrote, in pertinent part, that he "tr[ied] to feed dogs and tr[ied] to let dogs out," but that his "father help[ed] [him] with feeding and letting dogs out." He also wrote that he "tr[ied] to do thing[s] around house, like dishes[,] vacuum[,] etc.," and "tr[ied] to do [his] own laundry," but that he "need[ed] help" with the laundry because he tired easily, and that he was restricted in other household chores because it was "difficult for [him] to get around."

In November 2007, Genier underwent bariatric surgery. As a consequence of the surgery and related treatments, Genier reduced his weight from 494 pounds in June 2006 to 327 pounds at the time of his hearing before the ALJ, in April 2008. At the hearing, Genier testified that he

wished to return to work as soon as his doctor permitted him to do so. Genier testified that he continued to suffer from sleep apnea, high blood pressure, and back pain, but that they had improved significantly with treatment and as a result of his surgery and weight loss. He testified that he continued to suffer from severe knee pain, which caused his knee to give out approximately once a week.

Genier further testified that, *as of the time of his hearing*, he was sometimes able to clean, cook, and do outdoor chores, including snow shoveling and plowing. He indicated that he had been more substantially limited in these activities prior to his surgery and weight loss. He reported being able to stand or walk for ten to fifteen minutes at a time, and that he had regained the ability to climb stairs.

*The ALJ's Decision*

In determining that Genier was not disabled, the ALJ used the sequential evaluation process set forth at 20 C.F.R. §§ 404.1520 and 416.920. The ALJ concluded that Genier's obesity and sleep apnea were "severe" impairments, but that they did not correspond to an impairment set forth in Appendix 1 of 20 C.F.R. Part 404, Subpart P. The ALJ found that Genier retained the residual functional capacity ("RFC") to perform a wide range of medium work. Specifically, he concluded that Genier could lift up to thirty pounds occasionally and up to twenty pounds regularly, and that he could sit, stand, and walk for six hours each in an eight-hour workday. In reaching this conclusion, the ALJ considered Genier's assertions of pain and fatigue, but did not credit those assertions, as he found them to be contrary to the objective medical evidence and other evidence of record, including Genier's reports of his daily activities.

The ALJ's decision to discredit Genier's assertions was based, at least in part, on the fact that, according to the ALJ, Genier "indicated in a questionnaire dated May 11, 2006 that he was able to care for his dogs, vacuum, do dishes, cook, and do laundry." The ALJ added that Genier "testified at the hearing that he performs these household chores."

Because Genier's prior jobs required him to perform at exertional levels beyond his RFC, he could not perform his past relevant work. Given his age, education, experience, and RFC, however, the ALJ concluded that under Medical-Vocational Rule 203.29, set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2, Genier was capable of doing jobs that existed in significant numbers in the national economy. Because he determined that Genier was capable of substantial productive activity, the ALJ ruled that Genier was not disabled under the Act, and denied his claims.

## DISCUSSION

Genier argues that the ALJ erred by refusing to credit his reports of pain and fatigue on the ground that they were inconsistent with the objective medical evidence and other evidence of record. He also argues that the magistrate judge erred in refusing to consider an opinion letter submitted by his treating physician after the administrative hearing, and that the ALJ erred (1) by finding that Genier had the residual functional capacity to perform work at the medium exertional level; (2) by failing to consult a vocational expert when determining whether Genier could perform jobs that existed in significant numbers in the national economy; and (3) by failing to recontact one of Genier's treating physicians when the doctor did not submit a written evaluation along with his treatment records. We agree with Genier's first contention. The ALJ's

disbelief of Genier's claims as to his level of capacity was based on the ALJ's misperception of the evidence, which in fact did not contradict Genier's claims.

**I.      Standard of Review and Governing Law**

We review the ALJ's conclusions of law de novo and his findings of fact under a substantial evidence standard. 42 U.S.C. § 405(g); *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings "must be given conclusive effect" so long as they are supported by substantial evidence. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

In performing the evaluation process the Commissioner has established to determine whether an individual is disabled for purposes of the Act, *see* 20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987), the ALJ must determine whether a claimant who has a severe impairment nonetheless has the "residual functional capacity" ("RFC") to perform work available to him. *See* 20 C.F.R. § 404.1520, 404.1560. A claimant's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, 20 C.F.R. § 416.929; *see McLaughlin v. Sec'y of Health, Educ. & Welfare*, 612 F.2d 701, 704-05 (2d Cir. 1980), but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of

the claimant's testimony in light of the other evidence in the record. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). That requirement stems from the fact that subjective assertions of pain *alone* cannot ground a finding of disability. 20 C.F.R. § 404.1529(a). If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. *Id.* The ALJ must consider "[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings." 20 C.F.R. § 404.1512(b)(3); *see also* 20 C.F.R. § 404.1529(a); S.S.R. 96-7p.

**II.     The ALJ's Credibility Determination**

Purportedly applying this framework, the ALJ found that Genier's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are *inconsistent with the . . . evidence of record.*"

Before finding that Genier was not a credible reporter of his own limitations, the ALJ was required to consider all of the evidence of record, including Genier's testimony and other statements with respect to his daily activities. 20 C.F.R. § 404.1529, 404.1545(a)(3). The decision, however, was based on so serious a misunderstanding of Genier's statements that it cannot be deemed to have complied with the requirement that they be taken into account. The ALJ wrote that Genier "indicated in a questionnaire dated May 11, 2006 that he was able to care for his dogs, vacuum, do dishes, cook, and do laundry." In fact, Genier indicated on the questionnaire that he *tried* to care for his dogs, "to do thing[s] around house, like dishes[,] vacuum[,] etc.," and to do his laundry, but that he required the assistance of a parent for each of these tasks because of his severe fatigue.

In addition, the ALJ's decision was impaired by a misunderstanding of Genier's testimony at his hearing relating to his ability to "perform[] these household chores." After reviewing Genier's responses on the May 11 questionnaire, the ALJ wrote, "The claimant also testified at the hearing that he performs these household chores." That testimony, however, did not pertain to the same time period as Genier's written statements: it related to Genier's capacity *at the time of the hearing* – almost two years after he filled out the written questionnaire and six months after his bariatric surgery. Accordingly, Genier's testimony did not contradict his assertions that he had been substantially impaired by pain and fatigue prior to his treatment and surgery.

Because the ALJ's adverse credibility finding, which was crucial to his rejection of Genier's claim, was based on a misreading of the evidence, it did not comply with the ALJ's

obligation to consider "all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3), and cannot stand.

Finally, we note Genier's argument that the ALJ erred in not soliciting a statement from Genier's surgeon, Dr. Hixson, before ruling on his case. *See* 20 C.F.R. § 404.1512(e)(1) ("When the evidence we receive from your treating physician . . . or other medical source is inadequate for us to determine whether you are disabled . . . . [w]e will first recontact your treating physician . . . or other medical source to determine whether the additional information we need is readily available."). Because we remand on other grounds, we need not consider whether, under the circumstances, the ALJ's failure to develop the record in this manner would have independently warranted remand. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."). However, now that the ALJ has been alerted to the existence of a letter from Dr. Hixson that tends to support Genier's assertion of disability and to undermine the ALJ's prior findings that Genier was not credible and not disabled, the ALJ should consider that evidence in ruling anew in Genier's case.

**CONCLUSION**

We vacate the judgment of the district court and remand for further proceedings.