Denise WALLIS, Plaintiff,

v.

Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.

CIVIL ACTION NO. 14-cv-00216-WGY

United States District Court, N.D. New York.

Signed June 10, 2016

Peter W. Antonowicz, Office of Peter W. Antonowicz, Rome, NY, for Plaintiff.

Peter W. Jewett, Social Security Administration, New York, NY, for Defendant.

## MEMORANDUM & ORDER

WILLIAM G. YOUNG, United States District Judge [1]

## I. INTRODUCTION

Denise Wallis brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), against Carolyn W. Colvin, the Acting Commissioner of the Social Security Administration (the "Commissioner"), challenging the decision of the Commissioner denying Wallis's application for disability and insurance benefits. Compl. ¶ 3, ECF No. 1.

1. Of the District of Massachusetts, sitting by designation. ECF No. 16.

2. Wallis lists additional, different onset dates in her brief to the Court. See Social Security Pl.'s Br. ("Pl.'s Mem.") 2, 3, 22, ECF No. 14 (listening onset dates of June 30, 2007, December 31, 2004, and May 5, 2009, respectively). The Court will only consider the onset date of June 30, 2007, because it is the date listed in the Complaint.

3. For an explanation of the Court's use of this nomenclature, see Vega v. Colvin, Civil Action

## A. Procedural History

Wallis filed an application for Social Security Disability and Supplemental Security Income benefits (collectively, "benefits") on November 28, 2011, indicating that her disabling condition dated back to June 30, 2007.[2] Id. ¶¶ 3–4. On March 8, 2012, Wallis was notified that her application had been denied, and she subsequently filed a request for a hearing. Id. Wallis appeared before an Administrative Law Judge (the "hearing officer"[3]) on January 25, 2013. Id. ¶ 6. The hearing officer denied Wallis's request for benefits. Id. Wallis appealed the hearing officer's decision, and on February 7, 2014, the Appeals Council declined further review, rendering the hearing officer's decision the final decision of the Commissioner.[4] Id. ¶ 8.

Wallis filed her complaint in this Court on February 28, 2014, claiming the decision of the Commissioner not to award her benefits was "arbitrary, capricious, incorrect, and not supported by substantial evidence." Id. ¶ 9; see Social Security Pl.'s Br. ("Pl.'s Mem."), ECF No. 14. The Commissioner disagrees, arguing the hearing officer's findings of fact "are supported by substantial evidence and are conclusive." Def.'s Answer ¶ 9, ECF No. 9.

## B. Factual Background [5]

Wallis was born on September 27, 1969. Admin. R. Tr. ("Admin. R.") 29, ECF No.

No. 14–13900–WGY, 164 F.Supp.3d 249, 251–52, 2016 WL 865221, at *1 n. 1 (D.Mass. Mar. 2, 2016).

4. Throughout her Complaint, Wallis states that the Secretary of Health and Human Services is responsible for Social Security programs, but as the Commissioner points out, such responsibilities are hers, not the Secretary's. Def.'s Answer ¶ 3, ECF No. 9.

5. Wallis's challenge concerns the hearing officer's application of the applicable legal framework to the evidence of record, rather

10.[6] She completed an eighth-grade education and is able to communicate in English. Id. at 10, 29. Wallis is single and has three children. Id. at 45. She lives with her father and her eleven-year-old daughter at Wallis's father's residence. Id. at 45-46. Wallis has held different jobs during her lifetime, including a line worker at a factory, a packager at a cheese shop, a temporary employee, and a waitress. Id. at 182.

Wallis suffers from a variety of physical impairments including asthma and an abdominal hernia, id. at 286, though her application for benefits is based primarily on her psychiatric impairments, id. at 39, which include depression and post-traumatic stress disorder, id. at 69.

## II. LEGAL FRAMEWORK

This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 405(g). The Court reviews the Commissioner's findings and conclusions—here, those of the hearing officer, see, e.g., Perez v. Chater, 77 F.3d 41, 44 (2d Cir.1996)—to determine whether they are supported by substantial evidence in the administrative record, and whether the correct legal standards were applied. E.g., Moran v. Astrue, 569 F.3d 108, 112 (2d Cir.2009). The Supreme Court has defined substantial evidence as "more than a mere scintilla" and such evidence that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks and citation omitted). The underlying five-step disability determination is well-known and will not be recited again here; for a statement of this framework, see, for example, McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir.2014) (citing Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir.2008); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

## III. ANALYSIS

Wallis challenges the Commissioner's determination on three grounds. First, Wallis argues the Commissioner erred in his evaluation of the medical opinion evidence. Pl.'s Mem. 10-15. Second, Wallis argues the Commissioner failed properly to weigh the relevant medical evidence in determining Wallis's residual functional capacity. Id. at 15. Third, Wallis claims the Commissioner's assessment of her credibility is flawed. Id. at 16-22.[7] The Commissioner disputes each of these arguments, and urges the Court to affirm. See Def.'s Mem. Law Pursuant General Order 18 ("Def.'s Mem."), ECF No. 15. The Court addresses each of Wallis's arguments in turn.

### A. Weight of Treating Source Opinion

■ Wallis argues that the hearing officer erred in failing to assign sufficient weight to the opinion of Anandavalli Me-

---

than specific factual findings. See generally Pl.'s Mem. Accordingly, the Court offers only a brief overview of the factual circumstances and discusses the facts in further detail as relevant to the Court's review of Wallis's specific legal challenges, see infra Part III.

6. The administrative record is split across seven documents, labeled ECF Nos. 10-1 through 10-7. This opinion cites to page numbers in the continuously paginated record as a whole, rather than to individual docket entries that correspond to parts of the record.

7. In her introduction, Wallis also challenges the Commissioner's decision on the ground that "the Commissioner erred in failing to find that [Wallis's] condition equals Listing 12.04." Pl.'s Mem. 1. She fails, however, to identify any evidence in the record that calls into question the hearing officer's determination—implicit in his omission of a discussion of Listing 12.04 from his written decision—that Wallis does not suffer from a 12.04 listed impairment. Indeed, Wallis's memorandum contains no discussion of this argument at all.

non, M.D. ("Dr. Menon"), Wallis's psychologist. Pl.'s Mem. 10–12. Wallis argues that the hearing officer ought have given "great weight" to the opinion of Dr. Menon, as a treating source, and further that the hearing officer's purported reasons for not doing so are unsupported by the record. See id. at 10-15. The Commissioner maintains that the hearing officer provided adequate reasoning for his decision to weigh the medical opinions in the way that he did, and that this decision is supported by substantial evidence. Def.'s Mem. 5–8.

The opinions of treating sources are "[g]enerally" given "more weight" than those of non-treating sources. 20 C.F.R. § 404.1527(c). When a treating source's opinion is not given "controlling weight,"[8] a hearing officer must "give good reasons ... for the weight [he or she] give[s] the opinion." Id. §§ 404.1527(c)(2), 416.927(c)(2). The relevant factors a hearing officer ought consider in determining the appropriate weight are the "[l]ength of the treatment relationship and the frequency of examination[,]" the "[n]ature and extent of the treatment relationship[,]" the "[s]upportability" of the opinion (i.e., the extent to which the medical source has explained her findings and supported them with evidence such as "medical signs and laboratory findings"), consistency with the record as a whole, whether the source specializes in the area on which she has opined, and any other factors that "tend to

support or contradict the opinion." Id. § 404.1527(c)(2)–(6).

■ Here, Dr. Menon opined that Wallis is "unlikely able to do work,"[9] Admin. R. 343, and provided a checklist evaluating Wallis's ability to perform various tasks, see id. at 342-43. The hearing officer assigned Dr. Menon's opinion "limited weight" on the ground that "it is internally and externally inconsistent." Id. at 27. As for internal consistencies, the hearing officer pointed out, for example, that while "Dr. Menon noted that [Wallis] had 'marked' limitation in her ability to use judgment, function independently and demonstrate reliability. ... Dr. Menon also indicated, in two separate instances, that [Wallis] could manage benefits in her own best interest." Id. at 27. In terms of external inconsistencies, the hearing officer noted that Dr. Menon's opinion that Wallis "had 'extreme' limitations in ability to deal with [the] public, relate to authority figures, and maintain attention/concentration" are belied by Wallis's "function report" as well as the opinions of Wallis's primary care physician (who "generally noted that [Wallis] possessed intact judgment and insight") and the consulting psychiatrist (who "noted only a mild impairment to attention and concentration"). Id. Accordingly, the hearing officer's determination that Dr. Menon's opinion was entitled to limited weight is adequately supported and explained. See Michels v.

**8.** As Wallis does not argue that the Dr. Menon's opinion ought have been given "controlling weight," see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), the Court need not address the circumstances under which that is appropriate.

**9.** Conclusions about whether a claimant is disabled are not "medical opinions" entrusted to experts, but rather are reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Thus, as the hearing officer points out, Admin R. 26, he

was not required to give any weight to Dr. Menon's opinion regarding whether Wallis would be able to work. See Snell v. Apfel, 177 F.3d 128, 133 (2nd Cir.1999) (noting that "[a] treating physician's statement that the claimant is disabled cannot itself be determinative," and that when an opinion states a finding that is reserved for the hearing officer, the hearing officer "considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability.").

Astrue, 297 Fed.Appx. 74, 75–76 (2d Cir. 2008) (holding that hearing officer properly discounted treating physician's opinion where hearing officer pointed to conflicting medical evidence and internal inconsistencies).[10]

### B. Residual Functional Capacity

■ Wallis next argues that the hearing officer's residual functional capacity determination is flawed insofar as it reflects an improper assessment of the medical opinion evidence.[11] See Pl.'s Mem. 15. In particular, she argues that the hearing officer's "failure to appropriately accord weight to the opinions of treating sources" led him to arrive at a residual functional capacity that did not properly account for Wallis's "non-exertional impairments." Id. Because this Court has concluded that the hearing officer's weighing of medical opinion evidence was not in error, it must reject Wallis's argument concerning the hearing officer's residual functional capacity determination.

### C. Wallis's Credibility

■ Wallis's third argument is that the hearing officer erred by failing properly to assess Wallis's credibility as to her statements about her condition. Pl.'s Mem. 16-22. The Commissioner refutes this claim, arguing that the hearing officer's decision to discredit certain of Wallis's statements about her symptoms and their limiting effects was proper in light of contrary evidence contained in Wallis's treatment records. Def.'s Mem. 8-10.

■ A hearing officer "is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question" and "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). In evaluating Wallis's credibility, the hearing officer

> was required (1) to consider "all of the available evidence," including [Wallis's] own statements, the observations and opinions of [Wallis's] treating physicians, and the observations and opinions of other medical professionals who examined [Wallis] or reviewed [her] records; and (2) to weigh [Wallis's] statements against the objective evidence, including medical records.

Whipple v. Astrue, 479 Fed.Appx. 367, 370 (2d Cir.2012) (citing 20 C.F.R. § 404.1529(c)(1), (4)). Since the Commissioner is charged with the task of "re-

---

**10.** That there exists other evidence in the record that is consistent with Dr. Menon's determinations that Wallis suffered from "marked" and "extreme" limitations does not mean that the hearing officer erred. See White v. Comm'r of Social Sec., No.1:06–CV-0564(LEK/GJD), 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) ("Conflicts in evidence ... are for the Commissioner to resolve."); cf. Miles v. Harris, 645 F.2d 122, 124 (2d Cir.1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony").

**11.** Consistent with the relevant regulations, see 20 C.F.R. § 404.1520(a)(4), the hearing officer made a finding as to Wallis's residual

functional capacity before proceeding to evaluate her ability to perform various work. See Admin. R. 24. He concluded that Wallis

> has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except she is limited to avoiding concentrated exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas; limited to simple routine repetitive tasks, involving only simple work-related decisions with few, if any, work place changes; limited to no direct contact with the general public; and limited to only superficial interaction with coworkers and supervisors.

Id.

solv[ing] evidentiary conflicts and ... apprais[ing] the credibility of witnesses, including the claimant[,]" the Court will not disturb the Commissioner's adverse credibility determination so long as that determination is supported by substantial evidence. Aponte v. Sec'y, Dep't of Health and Human Servs. of United States, 728 F.2d 588, 591 (2d Cir.1984).

Here, the hearing officer found that Wallis's "medically determinable impairments reasonably could be expected to cause the alleged symptoms[,]" but that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible[.]" Admin R. 25.

To the extent Wallis's argument as to the hearing officer's credibility determination is premised on the hearing officer's failure correctly to weigh the opinions of treating sources, see Pl.'s Mem. 17-18, that argument lacks merit since, as discussed above, the hearing officer properly weighed the medical opinion evidence. Furthermore, while the hearing officer could have been more precise and thorough in explaining the reasoning behind his decision to discredit certain of Wallis's statements,[12] there is, nonetheless, substantial evidence to support that decision. Specifically, Wallis's testimony is undercut by its inconsistencies with other parts of the record and by a general dearth of corroborating evidence for it. For example, as the hearing officer pointed out, while Wallis stated that she quit working because she was afraid of people standing behind her, Admin. R. 43, she indicated on another occasion that it was transportation issues and childcare responsibilities that impeded her ability to work, id. at 281. The record also contains inconsistencies between her testimony and other evidence regarding Wallis's daily activities.[13] Moreover, Wallis's statements concerning the severity of her mental and psychological impairments are belied by medical reports from sources appropriately determined to be credible.[14] Given the substantial evidence on the record, the hearing officer properly evaluated the weight of Wallis's testimony.

---

**12.** Indeed, certain "issues" the hearing officer identified are arguably irrelevant to Wallis's credibility. Admin. R. 28. For example, the hearing officer pointed out that while "[t]he medical record indicates that [Wallis] alleged that her daughter was raped by her father[,]" Wallis later testified "that she and her daughter have recently moved into her father's residence." Id. Further, the hearing officer observed that Wallis "responded to various questions with 'I don't remember[,]'" despite being "able to recall other events with significant detail." Id. To the extent these are inconsistencies at all, the Court is not persuaded that they are sufficient to undermine Wallis's credibility.

**13.** For example, in her testimony, Wallis stated that she is unable to do laundry, do dishes, or go out. Admin. R. 50–51, 54. On her application for benefits, however, Wallis stated she could shop for food and clothes as needed, id. at 193, and that she had no problems with personal care, id. at 190. Moreover, she reported to a consulting physician that she "can do some cooking, cleaning, laundry, shopping, and childcare[,]" and that she can "go out." Id. at 286.

**14.** Wallis testified that she cannot work outside her house because she does not like when people "get behind [her]." Admin. R. 44. She also reported that she frequently "can't leave the house" due to "a fear[.]" Id. at 47. Several of Wallis's doctors, however, observed that Wallis is significantly less impaired than these statements would indicate. In October 2011, Dr. Jones found that Wallis has normal judgment, thought process, mood, and affect, id. at 25, 245, and that her speech, mood, affect, thought content, thought process, orientation, memory, insight and judgment were within normal limits, id. at 265–67. Additionally, Dr. Hansen found that Wallis had coherent and goal-oriented thoughts, mildly impaired concentration and attention due to the "evaluation setting[,]" intact memory and cognitive functioning, and fair insight. Id. at 283.

## III. CONCLUSION

For the foregoing reasons, the Court enters judgment for the Defendant, dismissing Wallis's complaint, ECF No. 1, and affirming the Commissioner's decision. **SO ORDERED.**