17-2156
Watson v. Berryhill

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of May, two thousand eighteen.

PRESENT:  JOHN M. WALKER, JR.,
          DENNIS JACOBS,
               <u>Circuit Judges</u>,
          KATHERINE B. FORREST,[1]
               <u>District Judge</u>.

- - - - - - - - - - - - - - - - - - - -X
ANDRE WATSON,
          <u>Plaintiff-Appellant</u>,

          -v.-                                          17-2156

NANCY A. BERRYHILL, ACTING

---

[1] Judge Katherine B. Forrest, of the United States District Court for the Southern District of New York, sitting by designation.

**COMMISSIONER OF SOCIAL SECURITY,**

       <u>**Defendant-Appellee.**</u>[2]

- - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| **FOR APPELLANT:** | C. THOMAS FURNISS, C. Thomas Furniss, LLC; Hartford, CT. |
| **FOR APPELLEE:** | PRASHANT TAMASKAR, Special Assistant United States Attorney (Marc H. Silverman, Assistant United States Attorney (of counsel), <u>on the brief</u>), <u>for</u> John H. Durham, United States Attorney for the District of Connecticut; New Haven, CT. |

Appeal from a judgment of the United States District Court for the District of Connecticut (Covello, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED**.

Andre Watson appeals from the judgment of the United States District Court for the District of Connecticut (Covello, <u>J.</u>) affirming the Commissioner's denial of his application for Supplemental Security Income ("SSI"). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

We "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." <u>Moran v. Astrue</u>, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (internal quotation

---

[2] The Clerk is respectfully directed to amend the caption as above.

marks omitted).  We can reject fact findings by an administrative law judge ("ALJ") "only if a reasonable factfinder would *have to conclude otherwise*."  Brault v. Soc. Sec. Admin, Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted) (emphasis in original).

"To determine whether a claimant is disabled, the Social Security Administration must undertake a five-step evaluation[.]"  Jasinski v. Barnhart, 341 F.3d 182, 183 (2d Cir. 2003).  At Step Three, the ALJ determines whether the severe impairment identified at Step Two "meets or equals one of [the] listings" contained in Appendix 1 to 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 416.920(a)(4)(iii).  If so, the claim is granted.  See 20 C.F.R. § 416.920(d).  If not, the ALJ assesses the claimant's residual functional capacity ("RFC") before proceeding to Step Four.  See 20 C.F.R. § 416.920(e).  The RFC is "the most [a claimant] can still do despite [the claimant's] limitations" based on all of his impairments, severe and non-severe.  20 C.F.R. § 416.945(a)(1).

Watson challenges the district court's determination that substantial evidence supported the ALJ's finding at Step Three that Watson's severe impairment of schizophrenia/psychotic disorder failed to satisfy the Paragraph B criteria for Listing 12.04.  Specifically, Watson argues that the ALJ ignored his and his mother's testimony about his limitations.  We disagree.

To establish a per se disabling mental impairment due to an "affective disorder," the Paragraph B criteria for Section 12.04 require a showing of at least two of the following: marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04B(1)-(4).

A marked limitation "means more than moderate but less than extreme." 20 C.F.R. Pt 404, Subpt. P, App'x 1, § 12.00(C).  The ALJ explained that activities of daily living "include[] adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephone and directories, using a post office, etc."  R. 23.[3]  Relying on a questionnaire completed by Watson's

---

[3] Citations to "R." refer to the administrative record filed in the district court.

counsel, the ALJ found that Watson could use public transportation, attend medical appointments, prepare simple meals, perform household chores, and attend to personal needs such as grocery shopping.  Relying on treatment notes from the Capitol Region Mental Health Center (the "CRMHC"), the ALJ observed that Watson had worked a temporary job during the relevant period, composed music as therapy, and played basketball.  The ALJ weighed this evidence and found that Watson had only a mild restriction in his activities of daily living.

The ALJ defined social functioning as "an individual's capacity to interact appropriately and communicate effectively with others."  R. 24.  The ALJ considered that Watson had few friends and that his legal history indicated anti-social behavior.  But the ALJ also cited Watson's ability to converse appropriately and carry on a conversation during the hearing, Watson's statements to the CRMHC that he played basketball and had friends, and observations by a treating physician that Watson would not have significant difficulty in a work environment or respecting authority figures.  The ALJ therefore decided that Watson had a moderate degree of limitations in his social functioning.

The ALJ defined concentration, persistence, or pace as "the ability to sustain focused attention sufficiently long enough to permit timely completion of tasks commonly found in a work setting."  R. 23.  The ALJ pointed to Watson's CRMHC intake assessment, in which a licensed clinical social worker observed that Watson's thinking was marked by a poverty of content, but that his memory was intact and that he had the ability to perform simple calculations.  The ALJ noted that this assessment was consistent with a 2013 mental status examination, which observed that Watson was not distracted or preoccupied and that his thought processes were coherent and organized.  Based on this medical evidence and Watson's testimony at the hearing, the ALJ found that Watson had moderate limitations with respect to concentration, persistence, or pace.[4]

Watson argues that the ALJ gave insufficient weight to his and his mother's testimony.  That testimony indicated that Watson did not have friends; that he had difficulty remembering, and heard voices; that he was fired from a

---

[4] Watson does not argue on appeal that he experienced episodes of decompensation.

job because of tardiness; that he had difficulty communicating; and that he did not have any household responsibilities and did not go shopping. But the administrative record shows that the ALJ did consider this evidence, see, e.g., R. 24 (noting "review of the file and the claimant's testimony at the hearing"), 25 ("I have weighed the claimant's mother's heartfelt and sincere testimony."), and "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). The ALJ reasonably determined that Watson did not suffer from marked limitations with respect to any of the Paragraph B criteria. Accordingly, the ALJ's conclusion is supported by substantial evidence, and Watson's challenge to the ALJ's Step Three determination fails.

Watson also challenges the district court's determination that substantial evidence supported the ALJ's credibility assessment, which only partially credited Watson's testimony about the extent of his impairments. We are unpersuaded.

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citations omitted). We defer to an ALJ's decision to discredit subjective complaints if the decision is supported by substantial evidence. Aponte v. Sec'y, Dep't of HHS, 728 F.2d 588, 591 (2d Cir. 1984).

Social Security "regulations provide a two-step process for evaluating a claimant's assertions of pain and other symptoms." Genier, 606 F.3d at 49. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce [the claimant's] symptoms." 20 C.F.R. § 416.929(b). If so, the ALJ "must then evaluate the intensity and persistence of [the claimant's] symptoms" to determine the extent to which the symptoms limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). "[W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator

5

must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). In doing so, the ALJ must consider:

> (i) [The claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve pain or other symptoms . . .; and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, at *2.

As an initial matter, the ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ did not find "entirely credible" Watson's statements with respect to the intensity, persistence, and limiting effects of these symptoms. R. 26. The ALJ then turned to the enumerated factors and adduced

6

specific reasons for only partially crediting Watson's testimony with respect to several of them.

As to daily activities, although Watson and his mother described long periods of sleep and inactivity, the ALJ observed that Watson had "reported working a temporary job during the relevant period, playing basketball, composing music as therapy, and grocery shopping one to two times monthly," and that Watson had abandoned his application for a job as a taxi driver because of the pay and background check, rather than his disabling symptoms. R. 26. Accordingly, the ALJ assigned "little weight" to Watson's reports of limited daily activities. R. 26.

As to symptoms, Watson complained of excessive sleep, auditory hallucinations, and debilitating fatigue. The ALJ observed that Watson's treatment records and his mother's testimony both reflect that Watson "becomes more symptomatic when the injections wear off or are overdue." R. 27. But the ALJ discounted these complaints based on medical treatment notes and reports from August 2012 to October 2013, showing normal sleep patterns and fatigue levels; control of symptoms with regular medication and counseling; a stable mood and euthymic affect; good attention, memory, and coherent thought processes; and only occasional hallucinations.

Finally, as to medication and treatment, although Watson reported that his monthly injection caused fatigue and made him feel "blank," the ALJ concluded that "the records do not document that the claimant has consistently experienced medication side effects that would more than minimally affect his ability to work." R. 27. Watson also participated in individual and group counseling sessions; although the treatment notes revealed "numerous no shows," R. 27, they also showed that Watson's "symptoms have stabilized with injection therapy and counseling," R. 26.

In sum, the ALJ used the proper legal framework for evaluating Watson's credibility and provided specific reasons for only partially crediting his testimony. We conclude that substantial evidence supports the ALJ's credibility determination.

We have considered Watson's remaining arguments and conclude that they are without any merit.  The judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK