*Benjamin v. Comm'r of Soc. Sec.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12ᵗʰ day of March, two thousand twenty-six.

Present:
> MICHAEL H. PARK,
> WILLIAM J. NARDINI,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

---

CHARLES BENJAMIN,

> *Plaintiff-Appellant*,

> v.                                                              25-2343

COMMISSIONER OF SOCIAL SECURITY,

> *Defendant-Appellee*.

---

FOR PLAINTIFF-APPELLANT:          MARK SCHNEIDER, Plattsburgh, NY.

FOR DEFENDANT-APPELLEE:          NATASHA OELTJEN, Special Assistant U.S. Attorney (Michael J. Pelgro, Head of Program Litigation 2, Social Security Administration Law & Policy, Todd Blanche, Deputy Attorney General, *on the brief*), *for* John A. Sarcone III, Acting U.S. Attorney for the Northern District of New York.

1

Appeal from a judgment of the United States District Court for the Northern District of New York (Lovric, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's September 26, 2025 judgment is **AFFIRMED** and Benjamin's motion to supplement the administrative record is **DENIED**.

Plaintiff-Appellant Charles Benjamin appeals from a judgment of the United States District Court for the Northern District of New York (Lovric, *M.J.*) affirming the denial by the Commissioner of Social Security of disability benefits for the period of November 1, 2021 to September 10, 2024. On appeal, Benjamin argues that the Administrative Law Judge's (ALJ's) decision to deny him disability benefits was not supported by substantial evidence. He also argues that the district court should have granted his motion to supplement the administrative record with a psychiatric assessment from March 2025, and he moves to supplement the administrative record with imaging and lab results from the fall and spring of 2025. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I.     The ALJ's Denial of Disability Benefits

"On an appeal from the denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (citation omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). So we "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Schillo*, 31 F.4th at 74 (quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable

2

mind might accept as adequate to support a conclusion." *Id.* (cleaned up). This standard is "very deferential," "even more so than the 'clearly erroneous' standard." *Id.* (quotation marks omitted).

Benjamin challenges: (1) the ALJ's failure to adopt certain medical opinions; (2) the purported lack of evidence supporting the ALJ's assessment of his "residual functional capacity" ("RFC"); and (3) the ALJ's credibility finding against him. We consider each in turn.

A.  Rejection of Certain Medical Opinions

An ALJ must evaluate two factors when deciding whether to accept or reject a medical opinion: "(1) 'supportability,' i.e., how well the objective medical evidence and explanations given support the medical source's conclusions; and (2) 'consistency,' i.e., how consistent the opinion is with the rest of the record." *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 73 (2d Cir. 2025) (quoting 20 C.F.R. § 404.1520c(a), (c)(1)–(2)). Benjamin challenges the ALJ's rejection of examining consultant Dr. Brett Hartman's conclusion that Benjamin had "marked" mental difficulties. He also challenges the ALJ's rejection of his physician Dr. David Simcoe's conclusion that he would require a job that allowed him to shift positions often, to take unscheduled breaks, and to be absent for around four days a month. These challenges fail because the ALJ's partial rejections of Dr. Hartman's and Dr. Simcoe's opinions were supported by substantial evidence.

The ALJ did not credit Dr. Hartman's conclusions that Benjamin had "marked" mental difficulties because Dr. Hartman's "examination and clinical findings" showed only "mild" mental difficulties and "the overall evidence reveals that [Benjamin] was able to engage in activities of daily living and self-care tasks." Sp. App'x at 30. Those conclusions were supported by the record. *See, e.g.*, Admin. R. at 990–91 (Dr. Hartman's notes that Benjamin's "attention and

3

concentration" and memory were only mildly impaired, that Benjamin's intellectual functioning was "in the average range," and that Benjamin could take care of himself and liked to "tinker" in his garage). The ALJ's conclusion—contrary to Dr. Hartman's report—that Benjamin had "no more than moderate mental limitations" was also supported by record evidence. Sp. App'x at 30. Two state agency consultants who reviewed Benjamin's medical records considered Benjamin's mental limitations "moderate," Admin. R. at 90, 102, and concluded that Benjamin could "sustain a normal workday and work week" with those limitations, *id.* at 96, 109. And Dr. Simcoe's observations that Benjamin was "[a]lert and oriented" and "[b]right and interactive," and that his "[j]udgment and insight [were] grossly intact," were consistent with those conclusions. *Id.* at 798.

Similarly, the ALJ did not credit all of Dr. Simcoe's opinions about Benjamin's ability to work because they were inconsistent with his own "examinations [of Benjamin], which were routinely unremarkable but for elevated blood pressure," Sp. App'x at 29, as reflected in his examination notes, *see* Admin. R. 782, 787, 983–84, 1066–67. The ALJ's conclusion was also consistent with other evidence in the record. For example, one examining consultant, Dr. John Fkiaras, reported that Benjamin was restricted mainly from activities involving any repetitive heavy lifting, carrying, pushing, and pulling—a much narrower restriction than Dr. Simcoe's— based on the doctor's evaluation that Benjamin had a "normal" gait, could "walk on heels and toes without difficulty," and do a full squat. *Id.* at 873, 875. A state agency consultant considered Dr. Fkiaras' opinion to be "consistent with and supported by the evidence in [Benjamin's] file," *id.* at 103–04, while it considered more restrictive reports only "*somewhat* consistent with and

4

supported by the evidence in [Benjamin's] file," *id.* at 103 (emphasis added). So the ALJ did not err in rejecting some of Dr. Simcoe's opinions.[1]

### B. Evidence for Residual Function Capacity Determination

Benjamin also argues that no evidence supported the ALJ's conclusion that he could perform full-time "light work," with certain limitations, *i.e.*, the ALJ's RFC determination. An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole," and its conclusion "need not perfectly match any single medical opinion in the record." *Schillo*, 31 F.4th at 78 (cleaned up); *see also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) (ALJ's conclusions need not "perfectly correspond with any of the opinions of medical sources cited in his decision"). Here, substantial evidence supports the ALJ's conclusion that Benjamin could perform "light work," with limitations to accommodate his high blood pressure. As noted, Dr. Fkiaras reported that Benjamin's physical limitations prevented him only from doing activities like repetitive heavy lifting, carrying, pushing, and pulling. And state agency consultants agreed that, notwithstanding Benjamin's mental limitations, he could "sustain a normal workday and work week." Admin. R. at 96, 109.

Still, Benjamin argues that the ALJ failed to consider pain and limitations from his various impairments, particularly his obesity. But the ALJ noted that Benjamin's "weight, including the impact on his ability to ambulate as well as on his other body systems, has been considered within the limitations of [his] residual function capacity." Sp. App'x at 23. It added that it "considered

---

[1] The ALJ also noted, when rejecting Dr. Simcoe's opinions, that "treatment notes indicated that [Benjamin's] blood pressure was under better control during periods when he was compliant with medications." Sp. App'x at 29. Benjamin argues that the ALJ gave "too much weight" to his occasional failure to take his blood pressure medications. Appellant's Br. at 39–40. But the ALJ appears to have given Benjamin's failure to take medications little weight; the ALJ accounted for Benjamin's "history of uncontrolled hypertension" when it limited Benjamin to "no more than light exertion[]." Sp. App'x at 30.

all of [Benjamin's] medically determinable impairments, including those that are not severe," when assessing his RFC. *Id.* at 22. Benjamin does not point to any evidence that his obesity (or other impairments) prevented him from doing light work. In short, the ALJ's consideration of Benjamin's impairments was sufficient. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (ALJ "does not have to state on the record every reason justifying a decision" or "discuss every piece of evidence submitted." (quotation marks omitted)).[2]

C.     Credibility Determination

Benjamin argues that the ALJ erred when it did not credit his testimony about the intensity, persistence, and limiting effects of his symptoms. An ALJ "is required to take the claimant's reports of pain and other limitations into account." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). But an ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* That evidence may include the claimant's "restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment." *Id.* (cleaned up); *see also* 20 C.F.R. § 416.929. An "ALJ's credibility determination is generally entitled to deference on appeal." *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013).

---

[2] The ALJ also did not err under *Nunez v. Commissioner of Social Security*, 164 F.4th 60 (2d Cir. 2025). In *Nunez*, the Court remanded for the ALJ to develop the record because it could not find "*any* justification for the ALJ's RFC determination" implying that the applicant did not need time off work. *Id.* at 71. There, the only medical opinions "to specifically address the likelihood of absence from work" concluded that the applicant "would likely miss two or more days of work per month." *Id.* at 71. The record here is unlike that in *Nunez* because the state agency consultants concluded that Benjamin could "sustain a normal workday and work week." Admin. R. at 96, 109. That is "substantial evidence" supporting the ALJ's RFC determination.

Here, the ALJ did the required balancing. It considered Benjamin's reports of pain when it summarized Benjamin's testimony about "pain in his neck," his inability to "pick things up over his head," "difficulty looking over his shoulder" and resulting trouble concentrating, "terrible headaches," and pain while sitting. Sp. App'x at 25–26. But it concluded that "the evidence does not support [Benjamin's] allegations of total disability." *Id.* at 28. The ALJ explained that Benjamin's "physical examinations were routinely significant for elevated blood pressure, but were otherwise unremarkable." *Id.* It also noted that Benjamin's symptoms were undermined by his documented ability to "shop, drive, cook, clean, launder, conduct self-care tasks, socialize with friends and family, go hunting, plow his driveway, work-part time, tinker in his driveway, . . . and care for his three dogs." *Id.*[3] The ALJ thus did not err by declining to credit Benjamin's testimony regarding the intensity, persistence, and limiting effects of his symptoms.

## II. Motions To Supplement the Administrative Record

Benjamin asked the district court to supplement the administrative record with a March 2025 psychiatric assessment, and he now asks us to supplement the record with this assessment as well as imaging and lab reports from May and September 2025. A court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to

---

[3] Benjamin points out that he experienced shortness of breath while hunting and some record evidence suggests Benjamin had trouble with day-to-day activities. *See* Appellant's Br. at 44; *see also* Admin. R. at 300, 781. But the record as a whole supports the ALJ's conclusion. *See id.* at 313–15, 325, 593, 811, 974, 991, 1049 (describing Benjamin's activities). This case does not resemble *Genier*, in which the ALJ erred when it found that the applicant took care of his dogs, vacuumed, washed dishes, cooked, and did laundry, when the applicant just "*tried*" to do those activities but ultimately "required the assistance of a parent." *Genier,* 606 F.3d at 50. Nor does it resemble *Balsamo v. Chater*, 142 F.3d 75 (2d Cir. 1998) (superseded in part by regulation), in which the ALJ erred when it concluded the applicant was "not homebound because he owns and operates a motor vehicle when required," even though the applicant "rarely left his house," outside periodic church visits and shopping trips. *Id.* at 81–82 (quotation marks omitted).

incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). "New evidence is material if it is both (1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative," *i.e.* "likely to affect the ALJ's consideration of [a] claim." *Pollard v. Halter*, 377 F.3d 183, 193–94 (2d Cir. 2004) (quotation marks omitted). Evidence "bearing upon an applicant's condition subsequent to the date" of a disability determination may be pertinent if it "disclose[s] the severity and continuity of impairments existing before" the date of the report. *Id.*

Benjamin has not established that either piece of new evidence "disclose[s] the severity and continuity of impairments existing before" September 10, 2024. *See id.* at 194. The March 2025 report mainly concerned "increased stress and anxiety symptoms" that Benjamin suffered "after he learned he was not dying from cancer" in January 2025, so it addresses a condition post-dating September 2024. Sp. App'x at 33. The report also concluded that Benjamin "scored in the average range on overall cognitive functioning" and did not have "cognitive impairments," *id.* at 35, so it is not "likely to affect the ALJ's consideration" of Benjamin's claim even if it did pertain to the relevant period, *Pollard*, 377 F.3d at 194. Similarly, Benjamin does not adequately explain how the imaging and lab reports from the spring and fall of 2025 shed light on his condition prior to September 2024.

\* \* \*

We have considered Benjamin's remaining arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the district court's September 26, 2025 judgment and **DENY** Benjamin's motion to supplement the record.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court